STATE OF IOWA V. CHARLES PASNAU, Appellant.

**Assault With Intent to Murder:**    DEGREES OF CRIME :    WRONGFUL
INTENT :  INSTRUCTIONS.    On a prosecution for assault with in-
tent to commit murder, and there is a conviction for assault
with intent to do great bodily injury, the intent to commit
the crime of which defendant was convicted is as essential as
in the commission of the crime charged, and an instruction
which fails to include the wrongful intent with reference to
both degrees of the crime constitutes reversible error.

**Aiding and Abetting:**  DRUNKENNESS :    INSTRUCTIONS.    One who is ·
so drunk as to be incapable of understanding what his co-
defendants are doing cannot be guilty of aiding and abetting
them, and where defendant is prosecuted on the theory of aid-
ing and abetting, and drunkenness is a defense, failure to so
instruct is error.

**Conspiracy:**  DEFENSE OF DRUNKENNESS :  INSTRUCTION.    Where it is
claimed by the prosecution that defendant conspired with
others for the purpose of committing a crime, and the defense
is drunkenness, failure to instruct that if defendant was so
drunk at the time as to be mentally incapable of entering into
a conspiracy, he was not guilty, is error.

**Evidence:**  CONCLUSION OF WITNESS.    A witness was asked "state
to the jury whether this man, Chas. Pasnau, and his brother
and Monhoran and Jones, appeared to all be acting together"
and was permitted to answer.    This called for a conclusion,
and should have been excluded under the objection.

*Appeal from Wapello District Court.*—HON. ROBERT SLOAN,
Judge.

WEDNESDAY, DECEMBER 17, 1902.

DEFENDANT, with seven others, was indicted for the
crime of an assault with intent to murder one G. W.
Houston.    On a separate trial, he was convicted of an
assault with intent to inflict a great bodily injury, and
from the judgment appeals.—*Reversed.*

*Steck & Smith* for appellant.

*Chas. W. Mullan*, Attorney General, and *Chas. A. Van Vleck*, Assistant Attorney General, for the State.

DEEMER, J.—The theory of the state is that defendant entered into a conspiracy with his codefendants to commit the crime; or that defendant aided and abetted the actual perpetrator of the offense, and was therefore guilty, although he did not himself make the assault. One of the defenses was intoxication. Defendant asked an instruction to the effect that if, at the time of the affray, he was so intoxicated as to be incapable of entertaining a specific intent to kill or to inflict a great bodily injury, he should not be convicted of either of these degrees of crime. He also requested the court to charge that, if he was so drunk as to be incapable of understanding what his codefendants were doing, he could not be guilty of aiding and abetting them in the commission of the offense. There is no doubt, under the evidence, that the assault complained of was not committed by the defendant. He is guilty, if at all, by reason of a conspiracy entered into by him with one or more of his codefendants, or by reason of having aided or abetted in the commission of the offense.

In lieu of the requests so made, the court gave the following:

"(23) You are instructed that intoxication or drunkenness is no defense to the commission of a crime, and no excuse therefor, nor does it relieve the person intoxicated from any responsibility for the consequences which are actually committed by him while intoxicated; and this is true without regard to the extent to which he is intoxicated when such acts are done. But you are instructed that, in the crime of assault with intent to commit murder, both malice aforethought and the specific intent to kill are

essential ingredients thereof, and hence, if you find that this defendant was so drunk at the time it is alleged such crime was committed that he was incapable of forming the specific intent to kill, or of entertaining malice aforethought, then you cannot find him guilty of such crime, unless it be by reason of aiding and abetting others therein, as heretofore explained, or as the originator and leader of a conspiracy, as hereafter explained."

"(24) You are also instructed that the same rule will apply with reference to intoxication, in determining whether or not there was an intent to kill, in determining the guilt or innocence of the defendant of the crime of assault with the intent to commit manslaughter, because the intent to kill is an essential element of that crime, unless you find defendant guilty thereof by reason of aiding and abetting others therein, as hereinafter explained, or as the originator and leader of a conspiracy, as hereafter explained."

"(26) If, however, you find that an assault with intent to murder G. W. Houston was made on him by one or more of the codefendants to the indictment, as charged therein, or an assault, with intent to commit manslaughter was made on said Houston by one or more of the codefendants thereto, as charged in the indictment, and you further find that this defendant was actually present, aiding and abetting such codefendant or defendants therein, then he would be responsible therefor, even though he was so drunk that he was incapable of forming an intent to kill or of entertaining malice aforethought."

"(27) The burden is on the defendant to show that he was so drunk as to render him incapable of forming an intent to kill or of entertaining malice aforethought, which he must show by the weight or preponderance of the evidence."

These instructions, in so far as they relate to drunkenness, are correct, when construed with reference to the

504                STATE OF IOWA v. PASNAU.          [118 Iowa

two degrees of crime mentioned, but clearly incorrect in

1. ASSAULT with
intent to
commit mur-
der: degrees
of crime:
wrongful in-
tent: instruc-
tions.

that they do not include an assault with in-
tent to inflict a great bodily injury, the degree
of crime of which defendant was convicted.
Wrongful intent is just as essential to this de-
gree as to the more serious ones to which the

court made reference, and, if defendant was so drunk as
to be incapable of forming this intent, he should, in the
absence of evidence that the crime was the result of a con-
spiracy formed when defendant was sober, have been ac-
quitted of this offense.    There was error, therefore, in
denying the request embodying this proposition of law.
*State v. Bell*, 29 Iowa, 316; *State v. Donovan*, 61 Iowa,
369; *State v. Garvey*, 11 Minn. 154 (Gil. 95).   The mere fact
that a great bodily injury was in fact inflicted upon Hous-
ton does not change the rule, for it is the unlawful intent
which the law aims at.     *State v. Clark*, 80 Iowa, 517;
*State v. Debolt*, 104 Iowa, 105.

These instructions are further erroneous, in that under
them the jury might have found the defendant guilty be-
cause of aiding and abetting in the commission of the

2. AIDING and
abetting:
drunken-
ness: in-
struction.

offense, although he may have been so drunk
as that, had he himself committed the crime,
he should have been acquitted on the ground

of drunkenness.   In other words, under these instructions
intoxication was no defense, if defendant aided and abetted
another in the commission of the crime.    There is a mani-
fest distinction between aiding and abetting another in
the commission of a crime, and participation in that crime
as a conspirator.    "The guilt of a person who aids and
abetts in the commission of a crime must be determined
upon the facts which show the part he had in it, and does
not depend upon the degree of another's guilt."    *State v.
Smith*, 100 Iowa, 1.   Whereas, in cases where the crime
is the result of a conspiracy, all are liable for the act, al-
though the particular harm was not in the minds of the

conspirators. *State v. McCahill*, 72 Iowa, 116; *State v. Munchrath*, 78 Iowa, 268; *State v. Shelledy* 8 Iowa, 505. This line of distinction was not observed by the learned trial judge; and not only the instructions quoted but others relating to defendant's connection with the offense, independent of the defense of drunkenness, were erroneously and plainly prejudicial.

Another instruction asked by the defendant was as follows: "(34) It is claimed by the state that the defendant conspired with others to go to Crip's barn for the purpose

3. CONSPIRACY: defense of drunkenness: instruction.

of engaging in an unlawful act, and it is claimed on the part of the defendant that he was so drunk at the time as to be incapable of entering into such conspiracy with a free will and understanding. Now, you are instructed on this branch of the case that if you find that the defendant was so drunk as to be incapable of knowing and understanding the nature of the contemplated conspiracy, and the consequences thereof, going to the Crip's barn, then you should find him not guilty of entering into such a conspiracy."

The trial court gave in lieu thereof the following: "(45) If you find any conspiracy was formed by the defendant and one or more of the co efendants for the unlawful purpose claimed by the state, and the conflict was brought on by the parties thereto in the prosecution of the common design and purpose thereof, and you further find that this defendant was the originator of such conspiracy, and brought it about, and was the leader in its execution, then he cannot claim immunity from the consequences of such conspiracy so originated and prosecuted by him, even though he was so intoxicated as to know nothing of it, nor realize what he was doing, and incapable of realizing and knowing that he was committing an unlawful act. But it would be otherwise if the conspiracy was originated by others, and he was led into it by others who formed and prosecuted it, and this defendant was at the time so

drunk that he was incapable of realizing and knowing
what he was doing, and incapable of forming any intent
or design to commit an unlawful act."

We have some difficulty in determining just what idea
the court intended to convey by this instruction, and are
somewhat puzzled over the distinction made between a
conspiracy of which the defendant was the originator, and
one into which he was led by others. We are also in doubt
about whether the court was referring in this instruction to
the condition of the defendant's mind when the conspiracy
was formed, or to its condition when the act was committed.
But whatever construction be adopted, it is manifest that
the rule of law announced in the instruction asked was not
given in such a manner as that a jury would be likely to un-
derstand it. That the rule there announced is correct is
shown by a number of authorities. See Booher v. State (Ind.
Sup. Ct.) 60 N. E. Rep. 156, 54 L. R. A. 391, and cases cited.
If defendant was so drunk at the time it is claimed the
conspiracy was entered into that he did not know what
he was doing, and was mentally incapable of concerting
his will with that of his coconspirators, he, of course,
should not be held responsible for what they afterwards
did, unless he himself had some part in the affray; and,
if he aided and abetted therein, the degree of his crime,
in the absence of proof of a conspiracy in which he con-
sciously participated, must be determined from what he
did at the time the crime was actually committed. This
is clearly pointed out in State v. Smith, 100 Iowa, 1. The
court was in error in denying the request now under con-
sideration.

Reference has already been made to the fact that the
court did not, in its instructions, preserve the distinction
between aiding and abetting in the commission of the
offense, and being a party thereto by reason of an unlaw-
ful conspiracy. We do not set out these instructions, as
it would serve no useful purpose. We may add, however,

that the trial court fell into the error of assuming that, if defendant aided and abetted in the commission of the crime, he was guilty of the same degree of crime as the principal. *State v. Wolf*, 112 Iowa, 458. What we have said sufficiently indicates our views as to the law of the case and will, no doubt, serve as a guide for proper instructions upon a retrial.

II. But one ruling on evidence need be considered. A witness was asked this question, "State to the jury whether or not this man, Chas. Pasnau, and his brother and Monhoran and Jones, appeared to be all acting together?" An objection to the question on the ground that it called for an opinion was overruled, and the ruling is assigned as error. The answer was, "Yes, sir." That this called for an opinion with reference to their conduct is clear. But, sometimes opinions of nonexperts are admissible for the reason that they cannot reproduce or describe the facts to the jury precisely as they appeared to them. In such cases the opinion is held to be in the nature of a fact. *Yahn v. City of Ottumwa*, 60 Iowa, 432.

4. Evidence: conclusion of witness.

But in this case one of the material and essential issues was whether or not the defendants were acting in concert, and a witness should not be allowed to place himself in the position of a juror, and to decide the very facts at issue. All that he saw could have been accurately described and reproduced, and the jury should have been left to draw the inferences. In no case to which our attention has been called has such an interrogatory been sustained. A witness should, as a general rule, state facts, and not opinions deduced from facts, for it is the peculiar province of the jury to determine upon the inferences which are to be drawn from the facts. The objection to the question should have been sustained.

For the errors pointed out, the judgment is reversed, and the cause remanded for a retrial.—Reversed.