| 132 | 475 |
|-----|-----|
| f134 | 602 |

---

## STATE OF IOWA, Appellee, v. SILAS YATES, Appellant.

**Assault with intent to kill:** REMARKS OF COURT: PREJUDICE. On a prosecution for assault with intent to kill, in which drunkenness was relied on as a defense, a remark of the court that he doubted the competency of certain evidence on the question of drunkenness is held to have been without prejudice.

**Intoxication as a defense to crime.** Intoxication which has not progressed so far as to rob one of his mental faculties and render him incapable of forming an intent is not a defense to crime.

**Same:** BURDEN OF PROOF. A defendant pleading intoxication as a defense to crime has the burden on that issue.

**Self-defense:** INSTRUCTION. Where there is no evidence that the crime committed by defendant was done in defense of his person the court is not required to instruct on the subject of self-defense.

**Verdict:** JUDGMENT. Where the court, in a prosecution for assault with intent to murder, submitted forms of verdict appropriate to each included offense, including form for verdict of not guilty, a finding of guilty as charged in the indictment authorized a judgment for assault with intent to murder.

**Sentence.** A sentence of eight years in the penitentiary under a conviction for assault with intent to murder is not excessive,

where defendant was of a vicious character and committed an unprovoked assault with a large knife.

*Appeal from Fremont District Court.*— HON W. R. GREEN, Judge.

TUESDAY, DECEMBER 11, 1906.

THE defendant was indicted for the crime of an assault with intent to commit murder. On trial he was convicted, and he appeals.— *Affirmed.*

*W. E. Mitchell,* for appellant.

*C. W. Mullan,* Attorney-General, and *Lawrence De Graff,* Assistant Attorney-General, for the State.

BISHOP, J,— As far as necessary to be stated in the outset, the facts of the offense charged were as follows: John Barhyte, the person upon whom the assault was made, was the keeper of a restaurant in Tabor. In the early evening of Christmas Day, 1905, the defendant entered such restaurant. He was more or less intoxicated, and soon began to make use of profane and indecent language. Barhyte ordered him to leave, and, upon his refusal to do so, took him by the arm, led him to the door, pushed him out on the steps, and closed the door. Defendant reopened the door, when Barhyte again pushed him out. As Barhyte turned to enter the room defendant stabbed him in the left side with a knife. As described by the attending surgeon, the resulting wound extended from near the edge of the shoulder blade down through and including part of the axillary space under the shoulder, and was about three and one-half inches in length and two inches in depth. The surgeon also testified that, but for the treatment applied, death might have resulted. After the assault defendant went to the home of his brother in Tabor where he was found

shortly after midnight by the sheriff and arrested. On the trial the fact of the assault was not questioned in evidence; the defense sought to be established being that defendant was so far intoxicated that he did not realize what he was doing. The further facts material to be considered will be noticed as we proceed.

I. Lester Yates, brother of defendant, answered the demand of the sheriff for admittance when the latter appeared to make the arrest. Lester then called defendant saying that the sheriff was after him, and he had better go and give himself up. As a witness on the trial, defendant was asked by his counsel what he said to his brother when the latter informed him of the presence of the sheriff. An objection by the prosecutor was sustained, the court remarking: " I have a good deal of doubt whether any of that evidence is competent or not, any evidence whether he recollected it or not." Counsel for appellant does not complain specifically of the ruling. It is the gist of his contention that the remarks made by the court in ruling were improper and prejudicial in that the effect thereof was to cast discredit on the defense of complete intoxication sought to be established. We are not disposed to think that any such importance should be attached to the language complained of. The remarks of the Court were not addressed to the subject of drunkenness as a defense. On the contrary, it is evident that the court was considering whether or not proof of complete drunkenness could be made out in the way in which it was being attempted. Moreover, as we shall see presently, the subject of drunkenness as a defense was fully covered by the instructions given to the jury.

1. ASSAULT WITH INTENT TO KILL: remarks of court: prejudice.

II. In the eighth instruction, after making reference to the claim of defendant that he was drunk at the time of the assault, the court said: " On this point you are instructed that drunkenness in itself is no defense, but, if the defendant was so completely intoxicated, and was in

such a besotted condition, that he was incapable at the
time of forming an intent, then he cannot be
found guilty," etc. And again in the ninth
instruction it was said: "If the liquor

**2. INTOXICATION AS A DEFENSE TO CRIME.**

which he claims to have drank had merely inflamed his
passion and caused him to be quarrelsome and abusive,
while at the same time, he was able to distinguish right
from wrong, and knew at the time he was doing wrong,
if he did assault Barhyte, then drunkenness would
be no defense." It is contended in respect of the instruc-
tions thus given that they involve an inconsistency, the ten-
dency whereof would be to bring confusion into the minds of
the jury. Accordingly, it is said, there was error. The
contention is devoid of merit. By general law every man
is presumed to be in possession of his mental faculties until
the contrary is made to appear. Now, in a case of this kind
the matter of intoxication becomes material only as related
to the question of intention — a specific intent being an
essential element of the crime charged. Within common
knowledge a man becomes intoxicated — that is, drunk —
when he passes under the influence of alcoholic liquor. And
there are degrees of intoxication varying all the way from
slight stimulation to complete coma. It is only at some
point along the line between the two extremes that the loss
of control of the mental faculties occurs. It follows that a
defense to a crime involving intention cannot be established
by merely showing that the perpetrator, was, at the time,
intoxicated; he must go farther, and make it appear that
his intoxication had progressed so far as to rob him of his
mental faculties — and hence, that he was no longer capable
of forming an intent or purpose. Stated in another way, a
man may be drunk, but his responsibility for crime continues
while he retains control of his mental faculties sufficient to
appreciate what he is doing. This is the thought of the
instructions complained of, and substantially the words.
And the doctrine thereof, not only has our present approval,

but finds ample support in our former cases. *State v. Donovan,* 61 Iowa, 369; *State v. Desmond,* 109 Iowa, 72; *State v. Pasnau,* 118 Iowa 501; McClain on Crim. Law, section 159.

III. It is further complained of the ninth instruction in that therein the jury was told that the burden was on the defendant to establish the fact of his intoxication by a preponderance of the evidence bearing on the subject. There was no error in this. Intoxication, like insanity, is an affirmative defense. In effect it confesses and seeks to avoid. In such cases the defendant takes the burden, not of proving his innocence of the crime charged, but of making proof of the special matter relied on by him which, if established, would operate to defeat the prosecution. State v. Pasnau, *supra.*

3. SAME:
burden of
proof.

IV. It is said that the trial court was in error for that the jury was not instructed on the law as related to the subject of self-defense. Without doubt it is the settled law of this State that the burden is upon the State to show that a defendant on trial for an assault was not acting in self-defense. *State v. Shea,* 104 Iowa, 724; *State v. Donahoe,* 78 Iowa, 486; *State v. Cross,* 68 Iowa, 180; *State v. Porter,* 34 Iowa, 131. And from this it follows that, in a case where the evidence — whether brought in by the State or by the defendant — tends to show that the act charged may have been done by the defendant in the lawful defense of his person, it would be incumbent on the court to instruct on the subject. Most certainly this is true if request shall be made therefor. State v. Shea, *supra.* But the rule is intended to have a reasonable application. It cannot be extended so far as to include a case where self-defense is not even suggested by the evidence as a ground of justification. Here the defense is predicated on the sole ground of drunkenness to such an extent that defendant, at the time of the act charged, had no control whatever over his mental faculties. If that were true, self-defense would be impossible,

4. SELF
DEFENSE:
instruction.

because necessary thereto must be not only a threatened danger but some degree of mental conception in respect thereof. And it would be absurd to charge a jury that, on finding that the defense of mental incapacity had not been made out, their inquiry should then be directed to the question of self-defense. And particularly would this be true where, as in the case before us, the assault was wholly unprovoked.

V. The verdict returned was in the following form: " We, the jury find the defendant, Silas Yates, guilty as charged in the indictment." The point is suggested that such verdict did not justify the court in entering judgment against the defendant as for an assault with intent to murder. And this for the reason that the charge specified in the indictment involved a charge of each of the included offenses. Counsel does not argue the point, and we shall dispose of it in brief. The point is made in this court for the first time. But, overlooking that, it appears that the court below submitted forms of verdict to the jury. The first form was that adopted by the jury, and this was followed by separate forms appropriate to a verdict of guilty on each of the included offenses, and naming them. There was then a form for verdict of not guilty. With this state of the record before us the contention is shorn of all force.

5. VERDICT: judgment.

VI. The judgment imposed imprisonment in the penitentiary for a term of eight years, and it is insisted that this is excessive. We do not think so. The assault was committed with a knife having the appearance of a hunting knife, and it was not only wholly unprovoked but altogether brutal. The circumstances thereof indicated that defendant was a man of vicious character, and altogether regardless of the sanctity of human life. He may be thankful that he was not called upon to face the more serious charge of murder. In view of the record we decline to interfere.

6. SENTENCE.

Some other matters are argued to which we have given attention but find nothing requiring further discussion.

Finding no error, and the judgment having our approval, it is *affirmed*.