# IN THE SUPREME COURT OF IOWA

No. 16–1218

Filed March 30, 2018

**RHONDA BANWART,**

Appellant,

vs.

**50TH STREET SPORTS, L.L.C.** d/b/a **DRAUGHT HOUSE 50,**

Appellee.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

An injured party seeks further review of a court of appeals decision affirming an adverse decision on a motion for summary judgment in a dramshop action. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Michael T. Norris of Slater & Norris, P.L.C., West Des Moines, for appellant.

Adam D. Zenor of Grefe & Sidney, P.L.C., Des Moines, for appellee.

**WIGGINS, Justice.**

The front end of an alleged intoxicated person's (AIP) vehicle struck the rear end of another vehicle. The driver of the struck vehicle filed suit against a bar under Iowa's dramshop statute, alleging the bar sold and served alcohol to the AIP when it knew or should have known the AIP was intoxicated or would become intoxicated. The driver also filed suit against the AIP. The district court granted the bar's motion to consolidate the actions.

The bar moved for summary judgment. The district court granted the bar's motion. The driver appealed. We transferred the case to our court of appeals. Adopting the analysis of the district court, the court of appeals affirmed summary judgment in favor of the bar.

The driver filed an application for further review, which we granted. Viewing the evidence in the light most favorable to the driver, we find a genuine issue of material fact exists as to whether the bar knew or should have known the AIP was or would become intoxicated when it served alcohol to her. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for further proceedings.

### I. Background Facts and Proceedings.

The summary judgment record contains the following facts. Michelle Campbell is a learning and development consultant in the human resources department of Holmes Murphy. On February 27, 2015, Campbell went to Draught House 50[1] in West Des Moines with a group of five or six coworkers for postwork happy hour. Campbell arrived at Draught House 50 around 4:30 p.m. and stayed until around

---

[1]50th Street Sports, L.L.C. operates Draught House 50.

8:30 p.m. She did not have any alcoholic beverages before arriving at or after leaving Draught House 50.

In her December 14 deposition, Campbell claimed she shared appetizers with her coworkers and consumed three bottled Peace Tree beers during the course of the evening. The record does not show the size or percentage of alcohol in these beers. Each of the three rounds was on an open tab. Campbell claimed she did not drink any shots, mixed drinks, or wine. Campbell stated she did not recall anyone else at the table consuming shots.

The CEO of Holmes Murphy bought the first two rounds and Campbell's supervisor bought the last round. Campbell claimed they ordered all three rounds of alcohol from a server who came to their table. Campbell further claimed neither she nor anyone else at the table exhibited excited emotions or yelled. According to Campbell, her group maintained the normal voice level of a bar on a Friday evening.

The record lacks evidence of when Draught House 50 served Campbell's last beer. However, Campbell's supervisor, the person who bought the last round, left around 7:30 p.m.

At the close of the gathering, Campbell got behind the wheel to drive home. She felt "in control" despite being "buzzed." Campbell stated her cell phone rang while on the road, so she looked down to see who was calling. At that moment, Campbell struck the rear of a vehicle stopped at a red light. Rhonda Banwart was the driver of the rear-ended vehicle and her two minor children were passengers. The accident occurred at the intersection of 60th and Ashworth Road, which is around fifteen to twenty blocks away, or a mile and a half away, from Draught House 50.

Officer Barry Graham was dispatched to the accident scene at 8:36 p.m. Upon arrival at the scene around 8:39 p.m., Officer Graham spoke with Campbell, at which point he smelled the odor of alcohol coming from her. Campbell told Officer Graham she was coming from Draught House 50 and had consumed three alcoholic beverages prior to driving. She informed him she felt "buzzed." Officer Graham noticed Campbell had bloodshot, watery eyes and slurred speech. She had difficulty understanding Officer Graham's request for license, registration, and insurance. Based on his education, training, and experience, Officer Graham considered Campbell's demeanor and difficulty following simple instructions as signs of intoxication.

Officer Graham requested Campbell to perform standard field sobriety tests, to which she complied. Campbell exited her vehicle and walked to the front of Officer Graham's squad car without stumbling. Officer Graham first conducted the horizontal gaze nystagmus test and noted Campbell "lacked smooth pursuit" in following his finger with her eyes. Campbell next agreed to perform the walk-and-turn test but expressed concern the cold temperature outside might affect her performance. Officer Graham thus transported Campbell to the West Des Moines police station to conduct the walk and turn. Campbell was not under arrest at this point.

At the police station, Campbell exhibited capricious emotions, from laughing and joking to crying, while attempting to complete the walk and turn. She failed to follow instructions, missed heel to toe, stepped off the line, raised her arms, took an improper number of steps, and made an improper turn. Officer Graham next asked Campbell to do the one-leg stand. She swayed from side to side and put her foot down during the

test. Based on the results of the tests, Officer Graham concluded Campbell showed signs of intoxication.

At 9:53 p.m., Campbell consented to a preliminary breath test, which indicated a blood alcohol content (BAC) of over .08. The legal limit is a BAC of .08. At 9:55 p.m., Officer Graham arrested Campbell for operating while intoxicated (OWI). Around 10:14 p.m., almost three hours after the supervisor who bought the last round left Draught House 50 and almost two hours after Campbell left Draught House 50, Officer Graham requested from Campbell a breath sample for the Datamaster, which indicated a BAC of .143. Campbell later pled guilty to the OWI charge.

On April 2, Banwart filed a petition on behalf of herself and her children against Draught House 50 under Iowa's dramshop statute. *See* Iowa Code § 123.92(1)(*a*) (2015). Banwart alleged Draught House 50 served alcohol to Campbell to the point of intoxication, and proximately caused Campbell's intoxication and the subsequent collision. On the same day, Banwart also filed a petition on behalf of herself and her children against Campbell, alleging Campbell was negligent for a number of reasons, including operating her vehicle while under the influence of alcohol.

In January 2016, the district court granted Draught House 50's motion to consolidate both petitions. On February 3, Draught House 50 filed a motion for summary judgment. The court granted summary judgment in favor of Draught House 50. In its order, the court noted the accident happened only a few minutes after Campbell left Draught House 50. However, even though the evidence from the accident scene was "highly material" to show Campbell was intoxicated when she left Draught House 50, the court reasoned the issue was whether Draught

House 50 knew or should have known that Campbell was intoxicated or would become intoxicated at the time it sold and served her the beers.

In granting summary judgment to Draught House 50, the court concluded that "the undisputed evidence of serving three beers over four hours, absent something more, [cannot] create[] an inference that Draught House knew or should [have] know[n] that . . . Campbell was intoxicated or would become intoxicated."

On July 19, Banwart appealed the district court's order. Banwart settled her claims with Campbell. Thus, the only defendant that remains in this action is Draught House 50.

We transferred the case to our court of appeals. The court of appeals affirmed the district court's judgment. Banwart filed an application for further review, which we granted.

**II. Issue.**

The issue is whether a genuine issue of material fact exists as to whether Draught House 50 knew or should have known Campbell was intoxicated or would become intoxicated when it sold and served the beers to her.

**III. Scope of Review.**

We review orders granting summary judgment for correction of errors at law. *Johnson Propane, Heating & Cooling, Inc. v. Iowa Dep't of Transp.*, 891 N.W.2d 220, 224 (Iowa 2017).

**IV. Summary Judgment Standards.**

Summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3); *accord Rucker v. Humboldt Cmty. Sch. Dist.*, 737 N.W.2d 292, 293 (Iowa 2007).

"A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved." *Estate of Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 584 (Iowa 2017) (quoting *Walker v. State*, 801 N.W.2d 548, 554 (Iowa 2011)). A fact is material when it might affect the outcome of a lawsuit. *Id.* "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005); *accord Brody v. Ruby*, 267 N.W.2d 902, 904 (Iowa 1978).

The moving party bears the burden of demonstrating the nonexistence of a material fact question. *Bank of the W. v. Kline*, 782 N.W.2d 453, 456 (Iowa 2010). "However, the nonmoving party may not rest upon the mere allegations of his [or her] pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005); *accord* Iowa R. Civ. P. 1.981(5).

We view the evidence in the light most favorable to the nonmoving party. *Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017). We also draw all legitimate inferences the evidence bears that will establish a genuine issue of material fact. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). A legitimate inference is "rational, reasonable, and otherwise permissible under the governing substantive law." *McIlravy v. N. River Ins.*, 653 N.W.2d 323, 328 (Iowa 2002) (quoting *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994)). "[A]n inference is not legitimate if it is 'based upon speculation or conjecture.'" *Id.* (quoting *Butler*, 530 N.W.2d at 88). Thus,

"[s]peculation is not sufficient to generate a genuine issue of fact." *Hlubek*, 701 N.W.2d at 96. Finally, circumstantial evidence is equally probative as direct evidence. Iowa R. App. P. 6.904(3)(*p*).

## V. Relevant Statutory Provision.

The relevant language of the dramshop statute provides,

> Any person who is injured in person or property . . . by an intoxicated person or resulting from the intoxication of a person[] has a right of action for all damages actually sustained, . . . against any licensee or permittee, . . . who sold and served any beer, wine, or intoxicating liquor to the intoxicated person *when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.*

Iowa Code § 123.92(1)(*a*) (emphasis added).

The legislature enacted the statute to give a right of action "to innocent victims harmed by persons who are served excess liquor by licensees and permittees." *Sanford v. Fillenwarth*, 863 N.W.2d 286, 290 (Iowa 2015); *accord Grovijohn v. Virjon, Inc.*, 643 N.W.2d 200, 202 (Iowa 2002). The purpose of the statute is to "place a hand of restraint" on licensees or permittees. *Thorp v. Casey's Gen. Stores, Inc.*, 446 N.W.2d 457, 467 (Iowa 1989) (quoting *Atkins v. Baxter*, 423 N.W.2d 6, 9 (Iowa 1988)). Thus, we "construe[] [the statute] liberally to discourage the selling of excess liquor." *Id.* (quoting *Atkins*, 423 N.W.2d at 9).

Section 123.92 previously imposed strict liability upon licensees and permittees. *Hobbiebrunken v. G & S Enters., Inc.*, 470 N.W.2d 19, 21 (Iowa 1991). However, in 1986, the legislature amended the section to require plaintiffs in dramshop actions "to prove the defendant's knowledge of the patron's intoxication." *Id.* at 21–22. Thus, in light of

the 1986 amendment, Banwart has the burden of proving scienter on the part of Draught House 50.

To maintain her cause of action, Banwart must demonstrate Draught House 50, a licensee or permittee, sold and served alcohol to Campbell when it knew or should have known that she was intoxicated or would become intoxicated, and Campbell's intoxication proximately caused Banwart's injury. *See Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 147–48 (Iowa 2002). The only issue we must resolve on appeal is whether Banwart can attribute the requisite knowledge or scienter to Draught House 50.

## VI. *Smith v. Shagnasty's, Inc.*

The seminal case in Iowa on the issue of proof of scienter under section 123.92 is *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67 (Iowa 2004). In that case, a plaintiff-patron brought a dramshop action against a bar when an unidentified AIP struck her in the face with a beer bottle. 688 N.W.2d at 70–71. Without identifying the AIP, the bouncers in the bar let the AIP leave the premises before the police arrived. *Id.* at 71.

The district court granted the bar's motion for summary judgment "because on the facts presented a jury could not reasonably conclude the bar sold and served the [AIP] alcohol and did so when it knew or should have known she was or would become intoxicated." *Id.* at 70. We reversed the district court's grant of summary judgment. *Id.* at 76.

First, we addressed the intoxication requirement of the dramshop statute. *Id.* at 72–73. We noted the dramshop statute does not require a particular degree of intoxication. *Id.* at 73. A person is intoxicated when he or she meets one or more of the following criteria: "(1) the person's reason or mental ability has been affected; (2) the person's judgment is impaired; (3) the person's emotions are visibly excited; and (4) the person

has, to any extent, lost control of bodily actions or motions." *Id.* at 72 (quoting *Garcia v. Naylor Concrete Co.*, 650 N.W.2d 87, 90 (Iowa 2002)). The degree of intoxication can range "from slight stimulation to complete coma." *Id.* at 73 (quoting *State v. Yates*, 132 Iowa 475, 478, 109 N.W. 1005, 1006 (1906)). If available, a person's BAC is important evidence to show intoxication. *Id.* at 72. Based on the AIP's demeanor in the bar and the law concerning intoxication, we found a genuine issue of material fact existed as to whether the AIP was intoxicated under the dramshop statute. *Id.* at 73.

Next, we discussed the sold and service requirement of the dramshop statute. *Id.* at 73–74. We detailed the law regarding the sold and service requirement as follows:

> A plaintiff may meet [the "sold and served" requirement with proof] that an establishment where alcohol is sold generally holds itself out as a place where persons are "served" in the ordinary sense of the word, *i.e.*, one providing premises where orders are taken, patrons are waited on, and drinks are supplied in open containers.

*Id.* (quoting *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 346 (Iowa 1991), *abrogated on other grounds by Thompson v. Kaczinski*, 774 N.W.2d 829, 837 (Iowa 2009)). Additionally, "it shall not be necessary in every case to prove payment in order to prove a sale within the meaning and intent of this chapter." *Id.* at 74 (quoting Iowa Code § 123.110). Based on the fact the AIP was holding a beer bottle in the bar, we found a genuine issue of fact existed as to whether the bar sold and served the AIP the beer. *Id.* at 73–74.

Lastly, we discussed the scienter issue. *Id.* at 74–75. We labeled this issue as the "thorniest issue" because the AIP was unidentified and left the bar prior to anyone talking to her or assessing her condition. *Id.*

at 74. In deciding this issue under the facts of the case, we first found that evidence of subsequent intoxication creates an inference that the bar sold and served beer to the AIP when it knew or should have known she was or would become intoxicated. *Id.* at 75. We stated the solitary beer the AIP was holding at the time of the attack did not alone cause her intoxication. *Id.* Thus, because the last drink did not solely push the AIP over the brink into intoxication, we inferred that at the time of service the bar had the requisite scienter. *Id.*

Specifically, we reasoned the AIP was "in a visibly intoxicated condition" shortly after the sale and service of beer. *Id.* We therefore reasoned "[the AIP] was also noticeably intoxicated at the time of service." *Id.* Thus, since the AIP was visibly intoxicated at the time of service, we concluded a jury could find the bar knew or should have known of the AIP's intoxication. *Id.* We acknowledged "a 'subsequent intoxicated condition inference' might not be appropriate in every case," but stated "the inference [was] warranted [in this case] because of the presumably short timeframe between service and the attack." *Id.*

We also found a jury could infer the bar sold and served alcohol when it knew or should have known the unidentified AIP was or would become intoxicated from the bar's conduct in allowing the AIP to leave before the police arrived or anyone could obtain identifying information. *Id.* at 75–76. We allowed this second inference because evidence of the AIP's potential testimony was unavailable to the injured plaintiff-patron. *Id.* at 76. Moreover, there was evidence the bar deliberately let the AIP abscond after agreeing to detain her, thereby admitting by conduct the weakness of the bar's case. *Id.*

We held the two inferences—subsequent intoxicated condition and intentionally letting the unidentified AIP abscond—in tandem were

enough to create a genuine issue of material fact that the bar sold and served alcohol when it knew or should have known the unidentified patron was or would become intoxicated. *Id.* We did not address whether the subsequent intoxicated condition inference alone could give rise to a question of fact. Thus, we left that question open. With *Smith* in mind, we now turn to the case at hand.

## VII. Application of Legal Principles to the Present Case.

We start with the fact Campbell was intoxicated at the time she left Draught House 50 around 8:30 p.m. Officer Graham's observations minutes after Campbell left Draught House 50, Campbell's admission she was "buzzed," and her guilty plea to the OWI charge all establish this fact. Additionally, around 10:14 p.m., almost three hours after the supervisor who bought the last round left Draught House 50 and almost two hours after Campbell left Draught House 50, Campbell's BAC was .143.

In *Smith,* we borrowed from the reasoning of the Indiana Court of Appeals which stated,

> [W]hen viewed most favorably to the non-moving party, the fact that [a bar] served *even one beer* to a person who shortly thereafter was in a state of serious intoxication gives rise to a question of fact whether [the intoxicated person] was visibly intoxicated at the time [of service].

*Id.* at 75 (emphasis in original) (quoting *Ward v. D & A Enters. of Clark Cty., Inc.*, 714 N.E.2d 728, 730 (Ind. Ct. App. 1999)).

A number of jurisdictions hold summary judgment is inappropriate when sufficient evidence points to the AIP's intoxicated condition shortly after his or her visit to the dramshop, even if the record lacks evidence regarding the AIP's demeanor at the time of the dramshop's service of alcohol to the AIP. *See, e.g., Kalenka v. Jadon, Inc.*, 305 P.3d 346, 350–

52 (Ala. 2013); *Ward,* 714 N.E.2d at 730; *Fairbanks v. J.B. McLoughlin Co.,* 929 P.2d 433, 436 (Wash. 1997) (per curiam) (stating the record contains evidence that the AIP did not exhibit signs of intoxication at the banquet but finding the jury could nevertheless use evidence of her demeanor at the accident scene to conclude she was obviously intoxicated at the banquet); *accord Speicher v. Reda,* 434 A.2d 183, 184–86 (Pa. Super. Ct. 1981) (holding the trial court erred in denying the appellants' motion to set aside the compulsory nonsuit when the AIP caused a vehicular accident five or ten minutes after leaving the bar and the investigating police officer and a witness noticed visible signs of intoxication, although the appellants did not present any evidence of the AIP's condition while at the bar); *Couts v. Ghion,* 421 A.2d 1184, 1186, 1188 (Pa. Super. Ct. 1980) (holding the issue of whether the AIP was visibly intoxicated when the bar served him his last drink should have been submitted to the jury because the AIP had consumed substantial amounts of alcohol, caused a vehicular accident forty-five minutes after leaving the bar, and displayed signs of intoxication to the investigating police officer, although the record lacked evidence of the AIP's condition when the bar served him his last drink).[2]

*Fairbanks* illustrates that direct evidence of intoxication at the time of service is not required to survive summary judgment. 929 P.2d at 436. In that case, an AIP attended a banquet for a little over three hours and allegedly consumed two glasses of champagne. *Id.* at 434. Shortly after she left, the AIP's vehicle rear-ended the plaintiff's vehicle at a stoplight. *Id.* A police officer arrived at the scene about ten minutes

---

[2] *But see Owens v. Hooters Rest.,* 41 So. 3d 743, 743 (Ala. 2009) (per curiam); *id.* at 743–44 (Cobb, C.J., concurring); *Reed v. Breton,* 718 N.W.2d 770, 776–77 (Mich. 2006).

later. *Id.* The officer noticed the patron slurred her speech and stumbled as she exited her vehicle. *Id.* After administering field sobriety tests, the officer arrested her for driving under the influence. *Id.* Approximately an hour later, the officer performed a breathalyzer test that showed the AIP's BAC at .17. *Id.*

The defendant offered testimony of three witnesses, all of whom stated the AIP did not appear intoxicated. *Id.* at 434–35. One witness stated the AIP gave a clear speech for an award presentation and did not smell of alcohol. *Id.* at 434. Another witness who was in charge of the banquet and watched the AIP give out awards did not notice any signs of intoxication. *Id.* at 434–35. The third witness stated he did not notice the AIP acting inebriated throughout the evening. *Id.* at 435. Despite the defendant's evidence pointing to the AIP's sober condition at the banquet, the Washington Supreme Court reasoned,

> A police officer's subjective observation that the employee was obviously intoxicated shortly after leaving the banquet may raise an inference that she was obviously intoxicated when the employer served her, *provided that the employee did not consume any alcohol after leaving the banquet and provided that no time remains unaccounted for between the banquet and the subsequent observation.*

*Id.* at 436 (emphasis added).

We agree with this analysis of the Washington Supreme Court. The issue is not whether a party uses circumstantial evidence, as opposed to direct evidence, to prove his or her claim because circumstantial evidence may raise a genuine issue of material fact. *See Smith*, 688 N.W.2d at 73–74. Rather, the issue is whether the party has proffered *sufficient* evidence. In regards to sufficiency of the evidence, "[e]vidence is substantial if a reasonable person would find it adequate to reach a conclusion." *Horak*, 648 N.W.2d at 147.

Even cases that found summary judgment appropriate bolster our conclusion. In *Sorensen v. Denny Nash Inc.*, an AIP struck three pedestrians while driving his vehicle. 671 N.Y.S.2d 559, 560 (App. Div. 1998). The AIP had been drinking at his friend's house and two taverns prior to the accident. *Id.* At the second location, a tavern called Silver Dollar, the AIP consumed drinks from 10:45 p.m. to 12 a.m. *Id.* Silver Dollar tendered testimony to show that the AIP was not visibly intoxicated when it had served him alcohol. *Id.* In opposition, the plaintiff submitted the affidavit of a forensic pathologist, which stated the AIP must have displayed signs of intoxication while at the Silver Dollar because the AIP was visibly intoxicated at the accident scene around 3:15 a.m. *Id.* at 560–61. The court held "proof that [the AIP] demonstrated visible signs of intoxication at 3:15 [a.m.], after patronizing [the third bar], [does not] provide a sound basis for drawing inferences about his appearance or demeanor *three hours earlier* at the Silver Dollar." *Id.* at 561 (emphasis added).

Banwart's case is distinguishable from *Sorensen.* Unlike the AIP in *Sorensen* who drank alcohol at three different locations and struck the pedestrians three hours after leaving the Silver Dollar, Campbell drank only at Draught House 50 on the day in question and rear-ended Banwart's vehicle within minutes after leaving Draught House 50.

In *Alaniz v. Rebello Food & Beverage, L.L.C.*, fifty-five minutes after an AIP left the second bar, the AIP struck and killed two people with his vehicle. 165 S.W.3d 7, 10 (Tex. App. 2005). The Texas Court of Appeals examined whether the district court properly granted a no-evidence summary judgment in favor of the defendants.[3] *Id.* at 12–17. The court

---

[3]The Texas Court of Appeals also examined whether the district court properly granted traditional summary judgment in favor of the defendants. *Alaniz,* 165 S.W.3d

of appeals acknowledged the utility of circumstantial evidence. *Id.* at 15. However, after considering the strength of the plaintiffs' proffered circumstantial evidence, the court of appeals concluded the evidence failed to transcend mere suspicion. *Id.* The plaintiffs had offered a video tape of the AIP at a convenience store where he stopped a couple minutes after the accident. *Id.* at 13. They had also offered the testimony of a customer who was at the convenience store when the AIP was there; the customer testified the AIP looked obviously intoxicated. *Id.*

The court of appeals reasoned because the AIP was at the convenience store about fifty-five minutes after leaving the second bar, both the video tape and the customer's testimony only showed that the AIP was intoxicated at the time he was at the convenience store. *Id.* Thus, the court of appeals concluded "[u]nder the facts of this case, this evidence does not establish that [the AIP] was obviously intoxicated while being served at the [second bar]." *Id.*

Banwart's case is distinguishable from *Alaniz*. Unlike the AIP in *Alaniz* who left the second bar fifty-five minutes before the accident occurred, Campbell left Draught House 50—the only bar at which she had consumed alcohol—a few minutes before she struck Banwart's vehicle. *See Ward*, 714 N.E.2d at 730 ("Factors [that] can be considered in determining whether a person was intoxicated to another person's knowledge include . . . the person's condition shortly after leaving."

_____

at 17–19. The defendants presented the affidavit and deposition testimony of the server who served drinks to the AIP at the second bar. *Id.* at 17. The server stated the AIP did not appear intoxicated at the time she served the drinks to him. *Id.* The defendants also provided other witness testimony testifying to the same effect. *Id.* at 18. In light of the defendants' evidence, the court of appeals stated the plaintiffs failed to present evidence raising a genuine issue of material fact with regard to whether the AIP appeared obviously intoxicated while at the second bar. *Id.* Thus, the court of appeals affirmed the district court's grant of traditional summary judgment in favor of the defendants. *Id.* at 19.

(quoting *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 362 (Ind. Ct. App. 1994))). In fact, in *Alaniz*, the Texas Court of Appeals acknowledged "[a]n inference the alcohol provider knew or should have known an individual was intoxicated is more reasonable when an accident occurs within a close temporal proximity to his leaving the provider's establishment." 165 S.W.3d at 15. Unlike the lack of temporal proximity in *Alaniz*, Banwart established close temporal proximity between Campbell's departure from Draught House 50 and the accident.[4]

Moreover, in *Alaniz*, the record lacked evidence of the AIP's whereabouts during the time interval after he left the second bar and before the deadly accident. Here, all of Campbell's time is accounted for between Draught House 50 and the accident because she did not consume any more alcohol after leaving Draught House 50.

Viewing the evidence in the light most favorable to Banwart and drawing all legitimate inferences the evidence bears to find a genuine issue of material fact, we find Banwart has proffered sufficient circumstantial evidence such that a reasonable fact finder could attribute scienter to Draught House 50. Upon arriving at the accident scene, Officer Graham spoke with Campbell and could smell the odor of alcohol wafting from her. He observed that she had bloodshot, watery

---

[4]We are not commenting on what explicitly constitutes close temporal proximity. There is no magic number. Rather, answering the question of whether a dramshop defendant possessed the requisite knowledge comes down to a fact-based analysis. *Compare Kalenka*, 305 P.3d at 351 (holding summary judgment was not warranted when the AIP stayed at the bar for two to four hours, drank no alcohol before arriving at or after leaving the bar, consumed around eighteen to nineteen drinks, exhibited signs of intoxication forty-five minutes after leaving the bar, and had a BAC of .27 at the time of the altercation), *with Sorensen*, 671 N.Y.S.2d at 560–61 (holding the plaintiff submitted insufficient evidence to establish that the second location served alcohol to the AIP while he was visibly intoxicated when the AIP consumed alcohol at three different locations and had left the second location three hours before the accident occurred).

eyes. Campbell slurred her speech when she stated she felt "buzzed." She had difficulty following simple instructions when Officer Graham asked for her license, registration, and insurance. Campbell did not properly perform the field sobriety tests that Officer Graham administered. Furthermore, Campbell did not consume any alcohol after leaving Draught House 50 and all time remains accounted for between Draught House 50 and Officer Graham's subsequent observations. Even though at least an hour may have passed from the time Draught House 50 served Campbell the last beer, she nevertheless exhibited observable signs of intoxication at the accident scene and the police station. In addition to these external indicators, Officer Graham administered a Datamaster test, which showed a BAC of .143. Campbell ultimately pled guilty to the OWI charge.

Evidence that Campbell did not exhibit signs of intoxication while at Draught House 50 does not preclude this case from going to the jury. The jury is free to disbelieve Campbell's testimony regarding her demeanor while at Draught House 50. *See State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997) ("Generally, the credibility of witnesses is left to the jury."); *Reed v. Breton*, 718 N.W.2d 770, 783 (Mich. 2006) (Kelly, J., dissenting) ("While it is true that all of defendant's witnesses testified that [the AIP] was not visibly intoxicated, that does not prevent the cases from going to the jury. It is not uncommon for a jury to disbelieve multiple eyewitnesses.").

In *Fairbanks*, the Washington Supreme Court reversed summary judgment dismissal that the trial court had granted in favor of the defendant. 929 P.2d. at 436. The court took into account the defendant had presented testimony from three witnesses who declared the AIP was not intoxicated at the banquet and the AIP's declaration that she had

allegedly consumed drinks at a lounge after leaving the banquet.[5]  *Id.* at 434–35.  However, the court nevertheless stated a reasonable fact finder could find the AIP left the banquet at 10:30 p.m. and caused the accident just twenty minutes later.  *Id.* at 436.  The police officer's and the plaintiff's observations of the AIP at the accident scene raised a genuine issue of material fact whether the AIP was obviously intoxicated at the banquet.  *Id.*

Furthermore, viewing the evidence in the light most favorable to Banwart and drawing all legitimate inferences therefrom, we find a jury could also disbelieve Campbell's testimony regarding the number of drinks she had at Draught House 50 and when Draught House 50 served those drinks.  Based on Officer Graham's observations and Campbell's BAC of .143 at 10:14 p.m., a fact finder could find Campbell had more than three drinks.  We know she did not have anything to drink after 8:30 p.m.  We also recognize "alcohol naturally dissipates from the body shortly after its consumption."  *State v. Johnson*, 744 N.W.2d 340, 342 (Iowa 2008).  These facts allow the fact finder to infer that Campbell's BAC was substantially higher than .143 when Draught House 50 served her alcohol.

Under the facts of this case, Officer Graham's observations of Campbell a few minutes after she left Draught House 50, in addition to Campbell's BAC of .143, raise a sufficient factual issue as to whether Draught House 50 had the requisite scienter at the time it served alcohol to Campbell.  Thus, Draught House 50 did not meet its burden in showing the absence of a genuine issue of material fact concerning the scienter element.  In granting summary judgment, the district court may

---

[5]The court noted the AIP declared this for the first time after the plaintiff settled with the AIP and sued the defendant.  *Id.* at 434.

not try issues of fact "but must determine only whether there are issues to be tried." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006); *accord Bauer v. Stern Fin. Co.*, 169 N.W.2d 850, 853 (Iowa 1969) ("In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to decide the merits of one which does.").

Our reasoning and holding today is consistent with those in *Smith*. Again, we left the question open in that case whether the subsequent intoxicated inference alone could raise a genuine issue of material fact as to the scienter requirement. Furthermore, we find the instant case is no weaker than that in *Smith*. In *Smith*, the bouncers allowed the unidentified AIP to abscond. 688 N.W.2d at 76. We considered the bouncers' actions as giving the plaintiff-patron the run-around. *Id.* Because we did not have any identifying information regarding the AIP and we had no evidence of the AIP's BAC, we combined this run-around inference with the subsequent intoxicated condition inference to conclude there was a genuine issue of material fact concerning the scienter requirement. *Id.* Here, unlike in *Smith*, Banwart has evidence of Campbell's BAC, which indicates a very high BAC after she left the bar.

Moreover, *Smith* does not pigeonhole the definition of temporal proximity to merely moments after a bar's service of alcohol to an AIP. Again, summary judgment is improper when sufficient evidence points to the AIP's intoxicated condition shortly after his or her visit to the dramshop, even if the record lacks evidence regarding the AIP's demeanor at the time of the dramshop's service of alcohol to the AIP. *See, e.g., Kalenka*, 305 P.3d at 350–51 (noting the record contains no direct evidence of the AIP's appearance or conduct at the bar); *Ward*, 714 N.E.2d at 729–30 (noting the AIP consumed an unknown amount of

alcohol at the bar and the bar failed to show the AIP consumed alcohol elsewhere); *Fairbanks*, 929 P.2d at 436 (noting the record contains contradicting evidence of the AIP's demeanor at the banquet and at the accident scene).

Viewing the evidence in the light most favorable to Banwart and drawing all legitimate inferences therefrom, we conclude a reasonable fact finder could find Draught House 50 knew or should have known Campbell was intoxicated or would become intoxicated at the time it served her alcohol.

### VIII. Disposition.

We vacate the decision of the court of appeals and reverse the judgment of the district court. Viewing the evidence in the light most favorable to Banwart, we find a genuine issue of material fact exists as to whether Draught House 50 knew or should have known Campbell was or would become intoxicated when it served alcohol to her.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Mansfield, Waterman, and Zager, JJ., who dissent.

#16–1218, *Banwart v. 50th Street Sports, L.L.C.*

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. The issue is whether Draught House 50

> sold and served any beer, wine, or intoxicating liquor to [Michelle Campbell] when the licensee or permittee knew or should have known the person was intoxicated, or . . . sold to and served [Campbell] to a point where the licensee or permittee knew or should have known the person would become intoxicated.

*See* Iowa Code § 123.92(1)(*a*) (2015).

The majority opinion creates, in effect, an inference of negligence whenever a patron leaves a licensee or permittee in an intoxicated condition. This isn't what the statute says, and it isn't what *Smith v. Shagnasty's, Inc.* says. *See* 688 N.W.2d 67 (Iowa 2004).

In *Smith*, the plaintiff was struck on the head with a beer bottle by an intoxicated assailant while visiting a bar. *Id.* at 70. She had recently had a hostile encounter with the assailant in the bar's restroom. *Id.* Upon leaving the restroom, the plaintiff and her companion found the assailant waiting, "muttering something unintelligible under her breath and holding a beer bottle in her hand." *Id.* The assailant had "acquired [the beer bottle] after leaving the restroom." *Id.* The assailant was a "loudmouth" and the plaintiff and her companion both concluded she was intoxicated. *Id.* The assailant hit the plaintiff in the face with the beer bottle, slicing up her face. *Id.* In the ensuing struggle, the plaintiff managed to get hold of the assailant by the hair. *Id.* Bar bouncers intervened. *Id.* The plaintiff agreed to let go of the assailant only after the bouncers promised to detain her until police arrived. *Id.* at 70–71. But the bouncers broke their word and let the Jane Doe assailant "slip into the night." *Id.* at 71.

We held that these particular facts were enough for the plaintiff to get her case to the jury. We said,

> We recognize that such a "subsequent intoxicated condition inference" might not be appropriate in every case, but in this case the inference is warranted because of the presumably short timeframe between service and the attack: for at the time of the attack, Doe was still in the bar, holding a beer, in a visibly intoxicated state. In this case, the inference tends to show that when Shagnasty's sold and served Doe the beer in question, Shagnasty's knew or should have known she (1) was already intoxicated or (2) would become intoxicated.

*Id.* at 75.

We then devoted a separate paragraph of the opinion to "the evidence in the record that tends to show Shagnasty's intentionally let Doe abscond after agreeing to hold her." *Id.* We concluded,

> In sum, we hold that two inferences, taken together, lead us to the conclusion that a reasonable jury could find a genuine issue of material fact on the scienter requirement of Smith's dramshop claim. The first inference arises from Doe's intoxicated condition shortly after the presumed time of service, the second from the bouncers actions that resulted in Doe's unknown identity. Summary judgment on the issue of scienter was not proper.

*Id.* at 76.

Even accepting that *Smith* would have come out the same way without the bar having suspiciously let the intoxicated assailant get away, the facts here are quite different. There is no evidence that Michelle Campbell was seen conspicuously intoxicated in Draught House 50 right after having been served a beer.

Campbell and six others were sitting at a table when they were served on a Friday late afternoon following work. While it is certainly fair to require a tavern to pay attention to the amount of alcohol it is serving to a particular customer, it's entirely possible that Campbell was drinking beverages not ordered by or for herself. And just because a

trained police officer observed signs of intoxication after Campbell was involved in a car accident, that does not mean Campbell would have appeared noticeably intoxicated to a server while part of a group at a table.

The fact-specific nature of these dramshop cases explains why we declined to establish a blanket inference of negligence based on intoxication in *Smith*, and also why we should decline to do so today.  For example, I might agree that the present record would be enough to get to the jury if Campbell had been ordering and drinking alcoholic beverages by herself at the bar, like Rick in *Casablanca*,[6] regardless of the amount Campbell claimed to have consumed.  But by establishing a blanket inference, the majority routinely sends to the jury all cases where the patron was intoxicated on leaving the establishment, regardless of their facts.  Whether the patron was part of a group singing "Die Wacht am Rhein" obnoxiously, singing "La Marseillaise" patriotically, or just behaving quietly, negligence is inferred.

Further factual development was far from an insurmountable task here.  The plaintiff could have served interrogatories on Draught House 50 or taken additional depositions.  Today, unlike in the days of Rick's Café, credit cards are frequently used.  (Although it remains true, as Rick would say, "Your cash is good at the bar.")  Campbell identified by name everyone seated at her table.  The plaintiff could have served a document request on Draught House 50 for any receipts for those individuals.  That alone might have shown that more rounds were served than the three rounds claimed by Campbell.

---

[6]*Casablanca* (Warner Bros. 1942).

Courts have to deal with human nature. The customer will tend to understate the amount of alcohol she or he consumed and the server will tend to remember that the customer looked fine. Even without knowing the size of the bottles or Campbell's body weight, there is reason to doubt her claim that she consumed only three bottles of beer, spaced out over a four-hour time period. But this court's response should not be to modify our precedent and adopt an overbroad blanket inference of negligence from intoxication. Rather, we should insist on further factual development concerning the actual circumstances within the establishment that served the alcoholic beverages, such as occurred in *Smith* and the out-of-state cases relied on by the majority.

For the foregoing reasons, I would affirm the judgment of the district court and the decision of the court of appeals.

Waterman and Zager, JJ., join this dissent.