# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1416

_____

United States of America

*Plaintiff - Appellee*

v.

Juan Carlos Manzano-Huerta

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: September 25, 2015
Filed: January 4, 2016

_____

Before RILEY, Chief Judge, BRIGHT and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Juan Carlos Manzano-Huerta ("Manzano") pleaded guilty to harboring, encouraging, and inducing an alien to reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A) and (a)(1)(B)(ii), and conspiracy to transport, harbor, and encourage and induce aliens to reside in the United States, in violation of 8 U.S.C.

§ 1324(a)(1)(A)(v)(I). The district court[1] sentenced him to 33 months' imprisonment. Manzano now appeals. He argues that his sentence should be vacated and his case remanded for resentencing because the Government breached the terms of his plea agreement. He also argues that the district court erred when it denied a three-level sentencing reduction for acceptance of responsibility under USSG § 3E1.1 and instead applied a two-level sentencing enhancement for obstruction of justice under USSG § 3C1.1. We affirm.

## I.

Manzano was the organizer, manager, and sole owner of Manzano Grain Bin Services, LLC ("MGBS"), a company that erected grain bins for commercial and farm use throughout the Midwest. At its peak, MGBS employed about thirty workers who were divided into different crews to perform work at various job sites. Different crew chiefs headed each crew, and Manzano told these chiefs where to assemble the bins and when to begin construction. In order to make sure that their work was satisfactory, Manzano often was present when his crews began construction and always was present when they ended construction. He also issued the equipment and vehicles to all crews and provided them with lodging and extra cash when they worked outside of a local area.

In August 2013, one of Manzano's crew chiefs, Ramon Perez, was arrested in Fayette County, Iowa for first-degree kidnapping and sexual abuse of a child. As part of an investigation into Perez, Homeland Security Investigations Special Agent Chris Cantrell met with Manzano. Shortly after this meeting, Cantrell began investigating Manzano for employing undocumented immigrants. Cantrell discovered that most of the men working for Manzano were immigrants from Honduras, Guatemala, and

---

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Mexico. Manzano hired these workers without requiring I-9 forms, and he knew that at least some of the workers had entered the United States illegally. Following Cantrell's investigation, Manzano pleaded guilty to harboring and conspiring to harbor aliens.

At Manzano's sentencing hearing, the Government sought a two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. The Government claimed that Manzano had provided materially false information to law enforcement during his August 2013 meeting with Agent Cantrell when Manzano stated that Perez was a subcontractor, instead of an employee, and was responsible for hiring his own workers. The Government also contended that Manzano tried to influence Perez to corroborate this false statement a month later during a recorded phone call.

Manzano objected to the enhancement, claiming that the Government violated the plea agreement during the sentencing hearing by offering evidence of his statements to Cantrell and Perez. Specifically, Manzano pointed to a factual stipulation in the plea agreement stating that Manzano "believed he could pay the workers and crew chiefs as independent contractors and did not withhold taxes from their pay." Manzano argued that the Government was contradicting the stipulation by asserting that his claim that the workers were subcontractors was a false statement, even though the Government stipulated that Manzano honestly believed that the statement was true.

Manzano further argued that he merely reported to Perez the statement that he had made to Cantrell but never ordered Perez to corroborate this statement. The record contains three different transcripts of the recorded phone call, one each from Manzano, Perez, and a Government transcriber. Perez submitted his transcript in Spanish. The Government and Manzano submitted transcripts translated into English. The Government's and Manzano's transcripts included the following exchange:

| | |
|---|---|
| Manzano: | I said you were a subcontractor and . . . that I gave you the jobs on contract and you would finish all of them. |
| Perez: | Oh, yes, yes, if they ask me something, well, if not, I won't say anything. |
| Manzano: | Uh-huh, okay! |

***

| | |
|---|---|
| Manzano: | That's good . . . that's what I said. |
| Perez: | Uh-huh! |

***

| | |
|---|---|
| Manzano: | I told him/her that you got your own workers. |
| Perez: | Yes, yes, yes, I'm going to do it. |
| Manzano: | That's good. |

Although Manzano's and the Government's transcripts are consistent, Perez's transcript differs as to the last segment of the conversation quoted above. Perez's transcript states—and Perez later testified—that Manzano urged him to "Tell [the investigator] that you got your own workers." However, both Manzano and the Government's translator interpreted this sentence as "I told him that you got your own workers."[2] The district court credited Perez's testimony. Given the context of the statements, the district court found that Manzano was attempting to convince Perez to corroborate Manzano's statement to Cantrell that Perez, not Manzano, was responsible for harboring illegal aliens.

The district court applied the obstruction-of-justice enhancement. The court held that "[t]he defendant, in an attempt to shield himself from criminal liability, attempted to convince authorities that he did not knowingly hire or employ or harbor illegal aliens." The district court also denied Manzano an acceptance-of-responsibility adjustment because Manzano falsely denied that he had obstructed justice. After calculating an advisory sentencing guidelines range of 33 to 41 months'

---

[2] The different translations turned on whether one word in the transcripts was "dile," as heard by Perez, or "dije," as interpreted in the other transcripts.

imprisonment, the district court sentenced him to 33 months' imprisonment, with 3 years' supervised release, and ordered him to pay a fine of $3,200.

II.

Manzano presents two challenges on appeal. First, he argues that we should vacate his sentence and remand for resentencing because the Government breached the plea agreement by soliciting testimony at his sentencing hearing to demonstrate that he lied about his relationship with his workers to Agent Cantrell and encouraged a witness, Perez, to do the same. Second, Manzano argues that the district court erred in assessing a guidelines enhancement for obstruction of justice and denying a downward adjustment for acceptance of responsibility.

A.

We review *de novo* questions regarding the interpretation and enforcement of plea agreements. *United States v. Noriega*, 760 F.3d 908, 910 (8th Cir. 2014). "Plea agreements are contractual in nature, and are interpreted according to general contract principles." *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994).

The parties dispute the interpretation of one sentence in the plea agreement's stipulation of facts, which states that "Defendant believed he could pay the workers and crew chiefs as independent contractors and did not withhold taxes from their pay." Manzano argues that if he believed he could pay his workers as subcontractors, then he must have believed that the workers *were* subcontractors. Therefore, Manzano claims, he could not have obstructed justice by attempting to convince law enforcement officers of that belief. According to Manzano, by presenting these statements as "lies," the Government contradicted this stipulation and thus breached the plea agreement.

-5-

We disagree. Instead, we read the agreement as stipulating only that Manzano believed that his method of paying the workers as subcontractors was proper. We interpret plea agreements according to their plain language. *Noriega*, 760 F.3d at 911 (rejecting defendant's claim that the Government breached a plea agreement because defendant's argument "impermissibly seeks to expand the . . . stipulation to bind the Government . . . in a manner not supported by the plain meaning of the plea agreement's text"). And the plain language of the plea agreement makes clear that the stipulation only relates to Manzano's belief that he could pay his workers as subcontractors. Moreover, Manzano's proposed interpretation is inconsistent with other stipulations in the plea agreement, which indicate that Manzano's relationship with his workers was much more involved than the typical relationship between a contractor and his subcontractors. In the plea agreement, the parties stipulated that Manzano provided the workers with vehicles, equipment, tools, and other materials, and that Manzano told the workers when and where to assemble the grain bins. These actions are consistent with those of an employer. *See, e.g.*, *Louismet v. Bielema*, 457 N.W.2d 10, 12-13 (Iowa Ct. App. 1990) (holding that workers were employees under Iowa law after finding, *inter alia*, that the employer "furnished the place to work and provided the workers with tools and equipment to use"). Under this narrow reading of the stipulation, the Government did not breach the plea agreement because it did not allege that Manzano obstructed justice by stating that he believed that he could pay his workers as subcontractors.

Even if we adopted Manzano's broad reading of the stipulation, we still would hold that the Government did not breach the plea agreement. The Government did not pursue the obstruction enhancement based on Manzano's classification of the workers as subcontractors rather than employees. Instead, the Government sought the enhancement under the theory that Manzano had attempted to shift blame onto Perez by suggesting that Perez, not Manzano, was responsible for harboring the illegal aliens. The Government claimed—and the district court found—that Manzano was

-6-

not truthful when he told Agent Cantrell that Perez was responsible for hiring and paying his own workers. Other parts of Manzano's plea agreement demonstrate that these statements were false: Manzano stipulated that he was responsible for paying the workers and had directed Perez to recruit workers for MGBS. The Government thus established that Manzano obstructed justice when he misled law enforcement by minimizing his role in hiring and paying illegal aliens to work for his company. The Government's pursuit of the enhancement was not inconsistent with Manzano's broad reading of the stipulation as asserting that Manzano believed the workers were subcontractors.

## B.

We next turn to Manzano's claim that the district court erred in calculating his advisory sentencing guidelines range. Manzano argues that the district court erred when it applied an enhancement for obstruction of justice after finding that Manzano lied to Agent Cantrell and encouraged Perez to corroborate this lie. "The district court must find the predicate facts supporting an enhancement for obstruction of justice by a preponderance of the evidence, and we review those findings for clear error." *United States v. Yarrington*, 634 F.3d 440, 452 (8th Cir. 2011) (quoting *United States v. Montes-Medina*, 570 F.3d 1052, 1061 (8th Cir. 2009).

Manzano first claims that his statements to Cantrell and Perez were not obstructive because, as stated in the plea agreement's stipulation, Manzano actually believed that the workers were subcontractors rather than employees. For the reasons explained above, we reject both Manzano's broad reading of the stipulation and his argument that the Government pursued the obstruction enhancement based on Manzano's classification of the workers as subcontractors.

Second, Manzano argues that the district court erred in relying on Perez's transcript and translation of their recorded phone call instead of crediting the transcripts from Manzano and the Government. The district court's assessment of witness credibility is "quintessentially a judgment call and virtually unassailable on appeal." *United States v. Rodriguez*, 711 F.3d 928, 938 (8th Cir. 2013) (quoting *United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003)). We find no clear error in the district court's credibility determination. Manzano began the phone call by stating that he was worried about being investigated for hiring illegal immigrants, and he spent the rest of the brief conversation reiterating that he had told Cantrell that Perez was a subcontractor responsible for hiring his own workers. Each time Manzano recited the story he had told Cantrell, Perez assured him that his story would be consistent with Manzano's; and each time Perez reassured him, Manzano responded positively. When viewed in their entirety, Manzano's statements to Perez—and his reactions to Perez agreeing to corroborate his story—demonstrate that Manzano encouraged Perez to lie.

Third, Manzano claims that his statements to Cantrell did not constitute obstruction of justice because the statements did not impede the investigation. *See United States v. Williams*, 288 F.3d 1079, 1081 (8th Cir. 2002) (holding that false statements to law enforcement are not obstructive unless the Government provides evidence that the conduct hindered its investigation). According to Manzano, he did not impede the investigation because he truthfully described his relationship with the workers such that it was obvious to Agent Cantrell that Manzano had hired the workers as his employees. However, Manzano's false statements did impede the investigation because law enforcement officers had to obtain additional evidence to contradict these statements and prove that Manzano illegally harbored aliens. Officers obtained phone calls between Manzano and Perez, seized 1099 forms during a search of Manzano's residence, and presented witnesses to testify in two hearings regarding Manzano's employment and transportation of some of his workers. *See*

*United States v. Finck*, 407 F.3d 908, 914 (8th Cir. 2005) (holding that obstruction-of-justice enhancement was warranted where defendant's false statement delayed investigation for eight days and caused law enforcement to expend unnecessary resources).

Having found that Manzano obstructed justice, the district court did not clearly err in denying him a reduction for acceptance of responsibility under USSG § 3E1.1. *United States v. Walker*, 688 F.3d 416, 425 (8th Cir. 2012) (reviewing for clear error the district court's determination that the defendant accepted responsibility). "Conduct resulting in an enhancement [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG § 3E1.1 cmt. 4. Although in "extraordinary cases" a court may apply an acceptance-of-responsibility adjustment despite finding that the defendant obstructed justice, Manzano's eventual cooperation with law enforcement does not warrant such treatment here. *See United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999). The district court noted that Manzano's obstructive conduct "was not an isolated instance, in that this conduct continued, and, actually, hasn't even ceased as of this day because this defendant . . . continues to deny that he obstructed justice." Given this conduct, the district court found that Manzano's willingness to agree to a plea deal was not sufficient to warrant an adjustment for acceptance of responsibility. *See id.* at 970.

III.

For all of the foregoing reasons, we affirm.

_____