# IN THE COURT OF APPEALS OF IOWA

No. 18-1455
Filed June 19, 2019

**ANDRES LECHUGA,**
        Plaintiff-Appellant,

**vs.**

**O & J ENTERPRISES, LLC,**
        Defendant-Appellee,

and MANZANO GRAIN BIN SERVICES, LLC, and
GARCIA GRAIN STRUCTURE, LLC,
        Defendants.
_____

        Appeal from the Iowa District Court for Fremont County, Mark J. Eveloff,

Judge.


        In an interlocutory appeal, a plaintiff challenges the district court decision

granting summary judgment to O & J Enterprises, LLC, in his tort action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Randall J. Shanks of Shanks Law Firm, Council Bluffs, for appellant.

        Joseph E. Jones and Elizabeth A. Culhane of Fraser Stryker, PC LLO,

Omaha, Nebraska, for appellee.


        Heard by Doyle, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

In an interlocutory appeal, Andres Lechuga challenges the district court decision granting summary judgment to O & J Enterprises, LLC (O & J) in his tort action. We find there are genuine issues of material fact on the questions of whether O & J had a subcontractor agreement with Garcia Grain Structures, LLC (Garcia Grain), whether Ezekiel Garcia was O & J's employee, and whether O & J and Garcia or Garcia Grain had a principal-agent relationship. On these issues we reverse the district court's decision granting summary judgment to O & J and remand for further proceedings. We find the district court properly granted summary judgment to O & J on the issue of whether O & J was in a joint venture with Mid-States Millwright & Builders, Inc. (MMB) and Garcia or Garcia Grain, and we affirm on this issue. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background Facts & Proceedings

The following facts are found in the affidavits, depositions, and documents submitted by O & J in support of its motion for summary judgment. In the past, MMB, a general contractor, used companies owned by Juan Manzano-Huerta (Manzano) as subcontractors to erect grain bins. Manzano first operated as Manzano Grain Bin Services, LLC (Manzano Grain), and then he dissolved the company and began operating as O & J.

In prior instances when MMB hired Manzano Grain or O & J as a subcontractor, Manzano and MMB signed a subcontractor agreement, which required all subcontractors to provide a certificate showing the subcontractor had workers' compensation insurance. The agreement also provided Manzano Grain

or O & J could not hire a subcontractor without prior written permission from MMB. Despite this provision, Manzano stated he almost always used a subcontractor to perform the work in erecting grain bins for MMB. The owner of MMB, Kevin Vier, and the sales manager, Brian Ryerson, stated they were unaware of this practice and had not given Manzano permission to hire subcontractors. Vier and Ryerson stated they believed they had been working with Manzano directly, either through Manzano Grain or O & J.

In 2013, Manzano and Manzano Grain came under investigation by the federal government for knowingly hiring undocumented workers.[1] *See United States v. Manzano-Huerta*, 809 F.3d 440, 442–43 (8th Cir. 2016). Manzano claimed he paid the workers as subcontractors and therefore believed they *were* subcontractors. *Id.* at 444. The Eighth Circuit found "Manzano's relationship with his workers was much more involved than the typical relationship between a contractor and his subcontractors." *Id.* Manzano pleaded guilty to harboring aliens and conspiring to harbor aliens. *Id.* at 442. He was sentenced to thirty-three months in prison. *Id.* Manzano was given an enhanced sentence based on a finding he had attempted to obstruct justice by encouraging an employee, Ramon Perez, to state Perez was a subcontractor who had hired the undocumented workers rather than Manzano. *Id.* at 446.

We turn now to the facts concerning the incident giving rise to this action. In 2014, Heartland Coop hired MMB as a general contractor to build grain bins on

---

[1]  Due to the investigation and resulting federal indictment, Manzano dissolved Manzano Grain. He then started a new corporation, O & J, to build grain bins to "[s]tart all over, fresh."

Heartland's property near Randolph, Iowa. MMB entered into a subcontractor agreement with L & D Construction to build the grain bins, but L & D was unable to complete the work. Time was of the essence in finishing the construction of the grain bins before the fall harvest in 2014.

In late August 2014, Ryerson, MMB's sales manager, contacted Manzano to ask O & J to complete the project. This was between the time Manzano pleaded guilty to the federal charges and the time he reported to prison. According to Manzano, he told Ryerson he would get a crew to complete the job but he could not do it himself because he could not go to Randolph due to travel restrictions as a result of his criminal proceedings. Ryerson stated he believed O & J was going to do the job. Ryerson stated there was no discussion about O & J hiring a subcontractor to put up the grain bins in Randolph. Ryerson told other MMB employees "Juan's crew" was going to put up the grain bins.

Ryerson created a subcontractor agreement between MMB and O & J, dated September 2, 2014, for the Randolph job, similar to contracts the parties had for other projects. Ryerson stated he left the contract at the MMB office for Manzano to sign and Manzano picked up the contract and took it with him. Manzano stated he was not presented with a subcontractor agreement before the accident. No parties have produced a signed copy of a subcontractor agreement between MMB and O & J for the Randolph job.

O & J states it entered into a written subcontractor agreement with Garcia Grain, owned by Garcia, to perform work at the Randolph job site. Lechuga raises concerns about the validity of the written subcontractor agreement between O & J and Garcia Grain because there are two copies of the agreement; Lechuga claims

Garcia's signatures on the two documents do not match. Lechuga claims the written subcontractor agreement may have been signed and dated at a later time in an effort to protect O & J and Manzano from liability in this action. The contract provided, "The Subcontractor shall make all decisions associated with how they wish to perform the terms of the Contract and shall be responsible to determine who, where and the length of the employment of any people hired by the Subcontractor."

O & J did not inform MMB it was using Garcia Grain as a subcontractor. MMB required all of its subcontractors to submit a certificate showing they had workers' compensation insurance. Ryerson stated because MMB was unaware of a subcontractor agreement between O & J and Garcia Grain, it did not obtain an insurance certificate from Garcia Grain. Garcia Grain did not have workers' compensation insurance.

In his deposition, Manzano stated he spoke to Garcia about the progress on the Randolph job, stating "I just get updates on stuff like that." He stated, "I'll get an update sometimes every two days," from Garcia. He stated if Garcia was missing a part, he would call Manzano, who would then call Ryerson.

On September 5, 2014, Garcia told Lechuga to stand on a wooden pallet, which was then lifted by Garcia about fifteen feet in the air by a telehandler, a type of forklift. Lechuga had a hard hat but was not provided with any other safety equipment. Lechuga fell fifteen feet to the ground from the wooden pallet and sustained injuries. There was a basket that could be attached to a lift at the site, but it was not used. All of the witnesses giving depositions testified it was unsafe to lift a person on a wooden pallet with a telehandler.

Garcia called Manzano to inform him about the accident. MMB's safety director, John Stephens, went to the job site and spoke to those he believed were O & J workers. Manzano was not at the site, and Stephens spoke to Garcia, who he thought was a foreman. Stephens stated, "I contacted Juan and told him I wanted to see him and whoever he had in charge at the site and wanted a full report of what happened." Manzano did not say anything at that time about having subcontractors at the job site. Ryerson also called Manzano the day of the accident and said, "Can you see what's going on?" Manzano told Ryerson he had contacted his workers' compensation insurance carrier. Manzano did not say Lechuga was not his employee.

About three or four days later, Manzano called Ryerson and said Lechuga was not an employee of O & J, as O & J had been using Garcia Grain as a subcontractor. Ryerson stated he was upset and had words with Manzano, because Manzano knew he was supposed to get written permission to use a subcontractor and had not done so.

On September 12, 2014, Stephens had a meeting with Manzano and Garcia.[2] Stephens testified he did not remember Manzano or Garcia telling him a company other than O & J was working at the Randolph job site. Stephens presented Manzano with the written subcontractor agreement with MMB, and Manzano refused to sign, stating he needed to study it further. Stephens produced a Safety Violation Report, which named O & J Construction as the "Subcontractor/Employer." The line designated for the "Violator's Signature" on

---

[2] A worker for Garcia Grain, Jesus Cruz, was also present to act as an interpreter for Garcia.

the report was signed by Garcia and the line for the "Supervisor's Signature" was signed by Manzano. Manzano claimed Stephens told him, "we've got to get this clarified before you guys can get paid," so he signed the Safety Violation Report. After the project was completed, Vier signed a contractor's affidavit listing subcontractors on the Randolph job, which named only O & J for "hopper bin erection."

On November 24, 2015, Lechuga filed suit against Heartland, MMB, O & J, Manzano Grain, and Garcia Grain, claiming the defendants were negligent and their negligence caused his injuries.[3] Lechuga claimed MMB, O & J, and Garcia Grain were engaged in a joint enterprise. Alternatively, Lechuga claimed O & J and Garcia Grain had a principal-agent relationship, so O & J was liable for the acts of its agent, Garcia Grain. Manzano Grain and Garcia Grain did not respond to the action and were found to be in default.

O & J filed a motion for summary judgment, claiming it did not exert any control over the job site and it did not sign a subcontractor agreement with MMB. O & J stated its sole involvement was to hire Garcia Grain as a subcontractor and it did not retain any control over the work performed by Garcia Grain. O & J stated none of its employees were at the job site.

The district court granted O & J's motion for summary judgment. The court found Lechuga had not presented evidence to show O & J was in control of the work of Garcia Grain. The court stated, "The Court agrees with [O & J] at this time [Lechuga] has not offered any evidence wherein a reasonable juror could conclude

---

[3] Lechuga settled with Heartland and MMB, and they were dismissed with prejudice.

that O & J had an equal right of control over Garcia's actions to call this a joint enterprise." The court also found, "there is no showing that there was a principal-agent relationship between O & J and Garcia." The court concluded, "there is no genuine issue of material fact existing and that it is appropriate to grant Defendant O & J's motion for summary judgment."

Lechuga filed an application for an interlocutory appeal, which was granted by the Iowa Supreme Court. The case was subsequently transferred to the Iowa Court of Appeals.

## II. Standard of Review

"We review district court summary judgment rulings for corrections of errors at law." *McQuistion v. City of Clinton*, 872 N.W.2d 817, 822 (Iowa 2015). "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* We view the record in the light most favorable to the nonmoving party. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018). "Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014). "The burden of showing undisputed facts entitling the moving party to summary judgment rests with the moving party." *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 496 (Iowa 2019).

## III. Subcontractor Agreement

Generally, "an employer of an independent contractor is not vicariously liable for injuries arising out of the contractor's negligence." *Downs v. A & H Constr., Ltd.*, 481 N.W.2d 520, 523–24 (Iowa 1992). This is due to "the lack of

control by the employer over the details of the contractor's work."[4] *Id.* at 524. O & J claims it hired Garcia Grain as an independent contractor and is not vicariously liable for the negligence of Garcia Grain under this rule, making summary judgment appropriate.

Lechuga claims the district court should not have granted summary judgment because there are genuine issues of material fact as to whether O & J was the employer of an independent contractor or whether O & J was the employer of the workers putting up the grain bins at the Randolph job site. Lechuga disputes O & J's claim there was a valid subcontractor agreement between O & J and Garcia Grain. Lechuga states there is evidence to show after the accident Manzano created the fiction there was a subcontractor agreement in order to insulate himself and O & J from liability. Lechuga states the written subcontractor agreement between O & J and Garcia Grain could have been created after the accident. Under Lechuga's theory, the rule in *Downs* does not apply and O & J would be vicariously liable for the negligence of its employees, including Garcia.

After examining all of the evidence submitted with O & J's motion for summary judgment and Lechuga's resistance, we find there are genuine issues of material fact on the question of whether Garcia Grain was a subcontractor to O & J or whether O & J was the employer of Garcia and the other workers erecting the grain bins.

---

[4] There are exceptions to the general rule when the owner is the possessor of the land, the employer retains a high degree of control over the contractor's work, or the work involves a peculiar risk or is inherently dangerous. *Downs*, 481 N.W.2d at 524–26.

We first note all of the witnesses from MMB stated they believed Manzano's company, which they sometimes referred to as "Juan's crew," was putting up the grain bins. When Ryerson initially discussed the project with Manzano, Ryerson stated he believed O & J was going to do the job. Ryerson stated there was no discussion about O & J hiring a subcontractor to put up the grain bins in Randolph. Based on previous contracts, Manzano was aware he was not supposed to use a subcontractor without prior written permission from MMB, and he did not obtain permission to use a subcontractor for this job. After the accident, Manzano told Ryerson he had contacted his workers' compensation insurance carrier. Manzano did not say Lechuga was not his employee. Also, after the project was completed, O & J was the only subcontractor listed for "hopper bin erection" in a contractor's affidavit for the Randolph project.

On the day of the accident, Stephens told Manzano, "I wanted to see him and whoever he had in charge at the site and wanted a full report of what happened." Manzano did not tell Stephens he was using a subcontractor. Additionally, Stephens testified he did not remember Manzano or Garcia telling him a company other than O & J was working at the Randolph job site at the September 12, 2014 meeting. On the Safety Violation Report, O & J Construction was named as the "Subcontractor/Employer." Manzano signed the report as the supervisor of Garcia, who signed as the violator. Manzano's interactions with Stephens and the safety report could lead to a finding Manzano and Garcia had an employer-employee relationship rather than a contractor-subcontractor relationship.

There is also evidence Garcia took direction from Manzano. Manzano testified he got an update about every two days from Garcia. He stated Garcia informed him of the crew's progress on the job, stating "I just get updates on stuff like that." Manzano stated if Garcia was missing a part, he would call Manzano, who would then call Ryerson, to resolve the situation. Garcia called Manzano to inform him of the accident.

Furthermore, a similar situation led to Manzano getting a sentencing enhancement in his federal criminal case due to evidence of obstruction of justice. *Manzano-Huerta*, 809 F.3d at 446. The Eighth Circuit found Manzano encouraged an employee, Perez, to falsely state Perez was a subcontractor to Manzano Grain and the undocumented workers at issue were employees of Perez, rather than Manzano Grain. *Id.* at 445–46. Manzano stated in his deposition in this case Manzano Grain usually used subcontractors, rather than having employees, but the Eighth Circuit found Manzano's "actions were consistent with those of an employer" in regard to Manzano Grain. *See id.* at 444. Lechuga points out the similarity to this case where Manzano is claiming Garcia was actually a subcontractor, not his employee. The factual circumstances in Manzano's federal criminal case raise questions about his credibility in stating he hired Garcia Grain as a subcontractor.

Finally, Lechuga raises concerns about the validity of the written subcontractor agreement between O & J and Garcia Grain. He states there are two copies of the agreement, from two different dates, but the signatures of Garcia on the two documents do not match. Lechuga claims the written subcontractor agreement might have been signed and dated at a later time in an effort to protect

O & J and Manzano from liability in this action. Due to the disparities between the two subcontractor agreements, there is a factual issue concerning the validity of the agreements.

As noted, O & J had the burden to show there was no genuine issue of material fact and it retained this burden at all times. *See Morris*, 924 N.W.2d at 496. "To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law." *Swainston v. Am. Family Mut. Ins. Co.*, 774 N.W.2d 478, 481 (Iowa 2009). Also, as the party seeking to show there was a contract between O & J and Garcia Grain, O & J has the burden of showing there was a contract. *See Hawkeye Land Co. v. Iowa Power & Light Co.*, 497 N.W.2d 480, 486 (Iowa Ct. App. 1993) ("A party who seeks recovery on a contract has the burden to prove the existence of a contract.").

We conclude the district court erred by granting summary judgment to O & J on the basis it was not liable for the negligence of a subcontractor, as there are genuine issues of material fact concerning whether O & J had a subcontractor agreement. O & J has not affirmatively established the existence of undisputed facts that entitle it to relief. *See Swainston*, 774 N.W.2d at 481.

## IV. Joint Venture

Lechuga claims there are genuine issues of material fact concerning whether O & J entered into a joint venture with MMB and Garcia or Garcia Grain to build the grain bins at the Randolph job site. The Iowa Supreme Court has stated:

A joint venture is defined as an association of two or more persons to carry out a single business enterprise for profit; also as a common undertaking in which two or more combined their property, money, efforts, skill or knowledge.

As a *general* rule, a joint venture is characterized by a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits and a duty to share the losses.

*Farm-Fuel Prods. Corp. v. Grain Processing Corp.*, 429 N.W.2d 153, 156 (Iowa 1988) (quoting *Brewer v. Cent. Constr. Co.*, 43 N.W.2d 131, 136 (Iowa 1950)). "In deciding whether a joint venture agreement exists, we have said that 'no particular form of expression or formality of execution is necessary. It need not be expressed but may be implied in whole or in part from the conduct of the parties.'" *Id.* (quoting *Pay-N-Taket, Inc. v. Crooks,* 145 N.W.2d 621, 625 (Iowa 1966)).

"Summary judgment is proper when the plaintiff's claim lacks evidence to support a jury question on an essential element of the claim." *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). O & J had a specific job at the Randoph job site—to erect the grain bins. The undisputed facts show O & J did not have a joint proprietary interest with MMB and Garcia or Garcia Grain to build the grain bins. There is no evidence to show O & J had a right to share in the profits or a duty to share in any losses. *See Farm-Fuel Prods. Corp.*, 429 N.W.2d at 156. We find the district court properly granted summary judgment to O & J on Lechuga's claims regarding a joint venture.

## V. Principal-Agent

Finally, Lechuga claims there are genuine issues of material fact as to whether O & J had a principal-agent relationship with Garcia or Garcia Grain. An agency has been defined as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall

act on the principal's behalf and *subject to the principal's control*, and the agent manifests assent or otherwise consents so to act." *Deeds v. City of Marion*, 914 N.W.2d 330, 349 (Iowa 2018) (quoting Restatement (Third) of Agency § 1.01, at 17 (Am. Law Inst. 2006)). "Generally, an agency relationship exists when an agent has actual or apparent authority to act on behalf of a principal and both principal and agent have mutually manifested assent to create it." *Hutchison v. Shull*, 878 N.W.2d 221, 235 (Iowa 2016). A principal-agent relationship may be shown by circumstantial evidence. *Id.*

As we discussed above, there is evidence Garcia acted subject to O & J's control. Garcia gave Manzano updates about the Randolph job about every two days. Garcia informed Manzano him of the crew's progress on the job. When Garcia was missing a part needed to complete the job, he would call Manzano. Additionally, Garcia called Manzano to inform him of the accident. The degree of control O & J exercised over Garcia may well depend on a finding of whether Garcia was O & J's employee or a subcontractor, and we have already determined there are genuine issues of material fact on this issue. We conclude there are also genuine issues of material fact on the question of if Garcia or Garcia Grain was acting as an agent of O & J. We determine the district court erred in granting summary judgment on this issue.

## VI.    Conclusions

We find there are genuine issues of material fact on the questions of whether O & J had a subcontractor agreement with Garcia Grain or Garcia was O & J's employee and whether O & J and Garcia or Garcia Grain had a principal-agent relationship. On these issues we reverse the district court's decision

granting summary judgment to O & J and remand for further proceedings.  We find the district court properly granted summary judgment to O & J on the issue of whether O & J was in a joint venture with MMB and Garcia or Garcia Grain, and we affirm on this issue.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**