# IN THE COURT OF APPEALS OF IOWA

No. 21-0215
Filed April 13, 2022

**RITA MCNEAL and CLIFF MCNEAL,**
    Plaintiffs-Appellants,

**vs.**

**WAPELLO COUNTY, WAPELLO COUNTY BOARD OF SUPERVISORS,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Wapello County, Shawn R. Showers,

Judge.


        Landowners appeal the grant of summary judgment for the county on their

breach-of-contract claim. **REVERSED AND REMANDED.**


        Matthew G. Sease of Sease & Wadding, Des Moines, for appellants.

        Eric M. Updegraff, Hugh J. Cain, Brent Hinders, and Daniel J. Johnston

(until withdrawal) of Hopkins & Huebner, Des Moines, for appellees.




        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

Derelict (der-ə-likt), adj. Forsaken; abandoned; cast away *<derelict property>*. That is how Black's Law Dictionary (11th ed. 2019) defines the key term in this contract dispute. But *how* to define "derelict"—as the word appears in a settlement agreement between property owners Rita and Cliff McNeal and Wapello County—is less important to this appeal than *who* does the defining. The district court granted summary judgment for the county on the McNeals' breach-of-contract claim, finding it could remove any vehicles from the McNeals' property that it determined to be derelict under the agreement. And the McNeals waived their right to challenge that removal, according to the ruling. Rejecting that interpretation of the contract language, we reverse the summary judgment and remand for further proceedings.

**I. Facts and Prior Proceedings**

The McNeals operate an auto repair shop in Ottumwa. As part of making repairs, they assess whether inoperable vehicles may be a source for parts. But this case does not involve the site of their business. Rather, the county objects to debris and "derelict vehicles" stored by the McNeals on their land zoned as single-family residential.[1] As far back as 2002, the county notified the McNeals that they could not use that property as a junk or salvage yard.

Flash forward seventeen years, the county was again concerned about the condition of the McNeals' property. Acting on that concern, in January 2019 the county requested bids to clean up and remove debris. Under the bid proposal, the

---

[1] Wapello County, Zoning Ord. § 40.12 (R-1 Single Family Residential District).

McNeals' property was to be cleared of brush, small trees, broken concrete, trash, and other debris. But the proposal noted that vehicles were not to be moved.

The McNeals responded to the county's action by seeking declaratory judgment and injunctive relief. The parties resolved the matter by a settlement agreement in April 2019. That agreement stated, in relevant part:

> WHEREAS, the Parties have agreed to allow the McNeals an additional reasonable time after notice to clean the property located at [address redacted] ("the Property").
>
> WHEREAS, the Parties have agreed to a procedure if the McNeals fail to clean the Property in accordance with Iowa Code § 331.384 [(2019)] and Wapello County Ordinances.
>
> IT IS HEREBY AGREED AS FOLLOWS:
>
> 1. The McNeals have 90 days from April 1, 2019 to clean the Property including the removal of debris and derelict vehicles and begin repairs on the residence located at [the Property].
>
> 2. Forty-five days after April 1, 2019 (May 16, 2019) the McNeals grant to the County the right to enter onto the Property and to determine what remaining debris, derelict vehicles, or repairs need to be completed. The County will then notify the McNeals of the additional work which needs to be completed within the 90 day period.
>
> 3. If the removal of debris, derelict vehicles, and maintenance of the Property has not been completed to the satisfaction of the County by the end of the 90th day (June 30, 2019), then the McNeals grant unto the County the right for the County and/or its agents to enter onto the Property and to remove all remaining debris, derelict vehicles, and unrepaired structures. The County's cost in removing such debris, derelict vehicles, or structures will be assessed against the Property pursuant to provisions of Iowa law, including Iowa Code § 331.384.
>
> 4. . . . Other than the procedure set forth in this Settlement Agreement, the McNeals waive and release any other statutory or common law right to challenge the County's right to enter the Property and to conduct cleanup activities, including any rights against the County's employees, elected officials, or agents.
>
> 5. Upon execution of this Agreement, the McNeals agree to dismiss without prejudice their Petition for Declaratory Judgment and Request for Injunctive Relief.
>
> 6. This Agreement is the entire agreement between the Parties and supersedes all prior discussions, understandings or representations.

Relying on paragraph two,[2] on May 16, county engineer Jeff Skalberg entered the McNeals' property. According to his affidavit, "No clean-up work appeared to have been done at that time." Skalberg wrote a letter to Rita McNeal on May 21 documenting his findings. But the county failed to make that letter part of the record. Also in his affidavit, Skalberg stated that as of June 30, the McNeals had not followed his instructions and "there remained on the property derelict vehicles and other debris."

In late August, the county sent a second letter to Rita McNeal, this time reporting its abatement action:

> On August 5, 2019 Wapello County removed 16 vehicles from your property in accordance to abate the property nuisance located at [address redacted]. This was done in accordance to the settlement agreement that was signed by you on April 23, 2019 stating that if the nuisance had not been abated by yourself, Wapello County would clean up the property for you and charge the cost of said actions to the property taxes.

The letter listed identifying information for the sixteen vehicles removed and told the McNeals that they had ten days to claim the vehicles or the vehicles would be destroyed. The letter advised the McNeals that, if claimed, the vehicles could not be returned to their property. The county calculated that the McNeals owed $3575 for towing and $10 per day per vehicle for storage. Those amounts had to be paid before the McNeals could reclaim the vehicles.

---

[2] The county's rights under paragraph two are uncertain, as the first sentence is unintelligible. If "need to be completed" at the end of that sentence modifies all terms that precede it, we cannot decipher what it means to "determine what remaining debris need to be completed" or "determine what derelict vehicles need to be completed." If "need to be completed" at the end of the sentence only modifies repairs, the sentence is still incomprehensible. As sorting this wording problem is not necessary to resolve the issues on appeal, we will not endeavor to detangle that sentence to try to determine its meaning.

This action began in September 2019. The McNeals sued the county for breach of the settlement agreement. They alleged the county removed all vehicles from their property though "[m]ost of the vehicles present on the property contained normal state licensure and/or dealer licensure and were not considered derelict [or] in derelict condition." The McNeals also sought temporary injunctive relief, asking the court to prevent the county from destroying the vehicles before the breach-of-contract claim was decided.

The county answered, admitting it removed all vehicles from the McNeals' property. But the county insisted those vehicles were "derelict" so its actions were proper under the terms of their agreement.

In August 2020, the County moved for summary judgment. It asserted the settlement agreement gave county officials "the discretion to determine whether certain vehicles are 'derelict'" and required the McNeals "to remove such vehicles" after the county "designates those vehicles as derelict." Additionally, the county claimed the agreement did "not allow [the McNeals] to independently litigate the meaning of the term 'derelict vehicle'" and, in fact, the McNeals "explicitly waived any such claims in the agreement." The county asked the court to dismiss the McNeals' lawsuit.

The McNeals resisted. They asserted the language of the agreement—that they waived their right to challenge anything "[o]ther than the procedure set forth in this Settlement Agreement"—did not prevent them from contesting the county's "clean up" as violating the agreed-upon procedures.

On the definition question, the McNeals conceded the county had some discretion in deciding what qualified as a "derelict vehicle." But they denied that

the agreement gave the county "complete, absolute, and arbitrary discretion" to determine the meaning of that term. They argued the summary judgment record was silent as to whether the sixteen removed vehicles fit an accepted definition of derelict. Without that proof, according to the McNeals, the county could not establish that it followed the agreement as a matter of law. The McNeals also argued the agreement did not give the county the right to destroy the removed vehicles. To support their position, the McNeals filed affidavits avowing that they did not intend to waive their right to challenge the county's enforcement of the agreement.

After a hearing in January 2021, the district court granted the county's request for summary judgment. The court concluded the waiver language in paragraph four "clearly prohibits [the McNeals] from challenging the rights granted pursuant to the agreement." But the court acknowledged the agreement did not preclude every breach-of-contract suit. Still, the court reasoned that the McNeals could only challenge the "procedure" followed by the county, not the rights granted to the county under the settlement agreement.

The court recognized the "thrust" of the McNeals' suit was a challenge to the county's interpretation of the term "derelict" in the agreement:

> Derelict is mentioned five times in the agreement. The first instance grants [the McNeals] 90 days to remove derelict vehicles. The second grants [the county] the right to enter upon the property and to determine what remaining derelict vehicles need to be completed. The third is to indicate that the removal of derelict vehicles must be done to the satisfaction of the [county]. The fourth is if the [county officials] are not satisfied, they may remove the derelict vehicles. The fifth is that the [county] may assess the cost in removing derelict vehicles to the [McNeals].

The court then found that the agreement gave the county sole discretion to decide whether vehicles were derelict and its decision was not subject to challenge.

> Based upon the language used in the agreement, the Court finds it [is] the intent of the parties that [the county] be granted the discretion to determine what constitutes derelict. . . . Here, the language of the agreement clearly states the removal of derelict vehicles is at the [county's] satisfaction and it is [county officials] who determine what remaining derelict vehicles need to be removed. Because the determination of dereliction is an exclusive power of [the County], and not the process by which the vehicles are removed, the Court find that interpretation of derelict is a right conferred to [the County] by the agreement. Therefore, the Court finds that paragraph 4 bars the [McNeals'] suit as it challenges the County's rights under the agreement.

The McNeals appeal that ruling, arguing (1) the waiver language in the settlement agreement did not preclude their breach-of-contract suit; and (2) there is a genuine issue of material fact whether the removed vehicles were derelict.

## II. Scope and Standards of Review

"Settlement agreements are essentially contracts, and general principles of contract law apply to their creation and interpretation." *Sierra Club v. Wayne Weber LLC*, 689 N.W.2d 696, 702 (Iowa 2004). This appeal calls us to assess the district court's interpretation of the contract language and its summary-judgment ruling. In both instances, our review is for errors of law. *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005).

"Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019); *see also* Iowa R. Civ. P. 1.981(3) (requiring court to consider "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any" when deciding motion for summary judgment). "A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018) (citation omitted). And "[a] fact is material when it might affect the outcome of a lawsuit." *Id.* We view the evidence in the light most favorable to the nonmoving party—here, the McNeals. *See id.* at 545.

**III. Analysis.**

The McNeals oppose the summary judgment in two stages. First, they dispute that paragraph four bars their suit. Second, they contest the county's "absolute and complete authority" to determine if a vehicle on their property was "derelict." We will follow their two-step structure in our analysis.

To dismiss the McNeals' petition, the district court relied on this sentence from paragraph four: "Other than the procedure set forth in this Settlement Agreement, the McNeals waive and release any other statutory or common law right to challenge the County's right to enter the Property and to conduct cleanup activities, including any rights against the County's employees, elected officials, or agents." Defending the dismissal, the county argues that "procedure" meant only the deadlines set in the settlement agreement—ninety days for the McNeals to remove debris and derelict vehicles and forty-five days for the county to enter to determine what cleanup was still needed.

But the McNeals read "procedure" more broadly. They contend the agreed-to procedure was not just a question of *when* the county could conduct its cleanup, but *what* the county could remove from the property. The McNeals insist that they

did not waive their right to challenge whether the county improperly conducted cleanup activities.

Before deciding which party has the more persuasive position, we consult the canons of contract interpretation.[3] The "cardinal rule" is to determine the intent of the parties when they entered into the contract. *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008). True, the contract's language "remain[s] the most important evidence of intention." *Id.* But the meaning of those words "can almost never be plain except in a context." *Id.* (quoting Restatement (Second) of Contracts § 212 cmt. b (Am. Law. Inst. 1979)).

So to determine what the parties meant by "procedure," we may consider extrinsic evidence, like the parties' relationship and their course of dealing. *See id.* "When the interpretation of a contract depends on the credibility of extrinsic evidence or on a choice among reasonable inferences that can be drawn from the extrinsic evidence, the question of interpretation is determined by the finder of fact." *Id.*

Both sides muster extrinsic evidence to place the settlement agreement in context. In their affidavits, Cliff and Rita McNeal assert that in operating their repair shop they "came to be in possession of the vehicles at issue" and did not consider them to be "derelict because they have productive value and are kept with the intention of being productively utilized by our business." They also note that the county's bid proposal predating the settlement agreement requisitioned debris

---

[3] During oral arguments, both counsel confirmed that the settlement agreement was drafted with input from each side. So we are not concerned with construing any ambiguities against the drafter. *See Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 416 (Iowa 1997).

removal but exempted vehicles, leading them to believe the county did not consider the vehicles to be derelict. In that vein, they deny any intent to waive their ability to challenge the county's interpretation of the settlement agreement.[4]

By contrast, the county—given the circumstances under which the deal was struck—sees the settlement agreement as the McNeals acknowledging the existence of a nuisance on their property. But, as counsel for the county conceded at oral argument, the agreement did not memorialize that acknowledgement. Nonetheless, the county alleges that the McNeals received a "substantial benefit" from the county deferring its right to abate that nuisance under Iowa Code section 331.384(2). And, in return, the McNeals agreed to waive their right to sue the county for anything except timing violations.

After considering the McNeals' sworn statements and the county's context evidence, we return to the agreement's language: "the most important evidence of intention." *Pillsbury,* 752 N.W.2d at 436. The key term is "procedure." It is not defined in the contract. So we assign the word its ordinary meaning. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013). The dictionary defines procedure as "a particular way of accomplishing something or of acting."[5] That definition goes beyond the narrow scope of timing ascribed by the county.

---

[4] The county contends that the parol-evidence rule forbids the use of McNeals' affidavits as extrinsic evidence "to vary, add to, or subtract from" the written agreement. *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). But we do not see that as the purpose for their introduction. Rather, the affidavits show the McNeals' situation and the objects they were striving to attain in the agreement. *See id.*

[5] *Procedure*, Merriam-Webster, https://www.merriam-webster.com/dictionary/procedure (last visited Apr. 8, 2022).

Because the interpretation of paragraph four depends on the credibility of the parties' extrinsic evidence and requires a choice among reasonable inferences that can be drawn from that extrinsic evidence, we find the McNeals have—at a minimum—generated a jury question. A reasonable fact finder could interpret "the procedure set forth in this Settlement Agreement" to include how the county conducts the cleanup, not just when officials could act. Under that broader definition, paragraph four would not preclude the McNeals from challenging the county's determination that all sixteen vehicles removed from their property were derelict.

Having decided the McNeals are not barred as a matter of law from suing the county, we turn to their second contention—that genuine issues of material fact exist as to whether the removed vehicles were indeed derelict. In urging a jury question, they contest the district court's interpretation of the settlement agreement as giving full discretion to county officials to decide what qualifies as a derelict vehicle. They point to another principle of contract construction—"that a contract will not be interpreted [as] giving discretion to one party in a manner which would put one party at the mercy of another unless the contract clearly requires such an interpretation." *Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991).

Defending its actions, the county points to paragraph three of the agreement as the source of its unbridled discretion. That paragraph provides that the county can enter the McNeals' property and remove "all remaining debris, derelict vehicles, and unrepaired structures" if the removal of debris and derelict vehicles has not been competed "to the satisfaction of the county by the end of the 90th

day." The county insists that the "completed-to-the-satisfaction-of-the-county" language was "integral to the resolution of the prior litigation" and allowed the county to determine whether the McNeals had "sufficiently removed derelict vehicles."

Even assuming the county's interpretation of "complete satisfaction" is valid, that phrase—on its face—does not give the county total authority to define derelict or, in turn, to decide what constitutes a derelict vehicle. True, neither "derelict" nor "derelict vehicles" is defined in the settlement agreement. But nowhere in the agreement does it say that the county will be the party deciding on the definition. If, as the county claims, the settlement agreement was meant to give the McNeals more time to get rid of junk vehicles, the agreement could have said that. Or, it could have identified the vehicles considered to be junk. Or, it could have defined "derelict vehicle" or a "junk vehicle." Or, it could have used terms already defined by ordinance, such as "junk vehicle" or "salvage yard."[6] But the settlement agreement did none of those things.

A fair reading of paragraph three as drafted contemplates the county only removing vehicles that met a common understanding of the term derelict. Trouble

---

[6] The county has ordinances that define "junk or salvage" to include "junked, dismantled, or wrecked motor vehicles, or parts of motor vehicles." Wapello County, Zoning Ord. § 40.05(52). Those ordinances also define a "junk or salvage yard" as an area where such items were "bought, sold, exchanged, baled or packed, disassembled, kept, stored or handled." *Id.* § 40.05(53). The ordinance provided that the presence of three or more "wrecked, scrapped, ruined, dismantled or inoperative motor vehicles" would be "prima facie evidence of a junk or salvage yard." But the ordinance exempted motor vehicles licensed for the current year; or up to five motor vehicles legally placed in storage; or more than five legally stored vehicles if kept within a completely enclosed building or totally screened from view.

is, the phrase "derelict vehicle" is obscure. It does not appear in Iowa Code section 331.384, the nuisance statute referenced in the agreement. Nor does it appear in the Wapello County ordinances referenced in the agreement.

When asked at oral argument how Wapello County defined "derelict," the county's counsel responded: "It's in our discretion." Counsel explained that "the purpose of the settlement" was for the property to be cleaned up "to the satisfaction of the county because that's the only way to resolve the nuisance issue." In response to a follow-up question, counsel submitted that the county could, in its absolute discretion under the settlement agreement, decide that a brand-new vehicle with current license plates was derelict and remove it. We find that response telling. Assigning that level of unchecked authority to the county is inconsistent with the norms of contract interpretation. *Power Eng'g & Mfg., Ltd. v. Krug Int'l*, 501 N.W.2d 490, 493 (Iowa 1993) (generally courts will not interpret a contract in a manner that would put one party at the mercy of another).

Despite the county's complaint that it will not receive the benefit of its bargain, the settlement agreement cannot be fairly interpreted to give the county absolute discretion to label a vehicle as derelict. Without an agreement by the parties or a determination through legal proceedings that certain vehicles were derelict, the county did not have a right to proceed as if such an agreement or determination existed. As a result, summary judgment in the county's favor was improper. We reverse the grant of summary judgment to the county and remand for further proceedings.

**REVERSED AND REMANDED.**

Ahlers, J., concurs; Greer, J., dissents.

**GREER, Judge** (dissenting).

Time ran out for Rita and Cliff McNeal, so their previous counsel and the Wapello County attorney jointly tooled the settlement agreement in dispute in this appeal to avoid nuisance proceedings.[7]  Regrettably, the McNeals now pick at its terms and have convinced the majority the settlement agreement does not mean what it says.  I dissent because I agree with the district court's interpretation of the settlement agreement's terms.  I would affirm its ruling on summary judgment.

With an eye on the rules, we should not attempt to rewrite what these folks meant when they crafted the agreement's terms.

> The law favors settlement of controversies.  A settlement agreement is essentially contractual in nature.  The typical settlement resolves uncertain claims and defenses, and the settlement obviates the necessity of further legal proceedings between the settling parties.  We have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized.

*Walker v. Gribble*, 689 N.W.2d 104, 109 (Iowa 2004) (citation omitted).  Under the majority's opinion, the nuisance case now starts from scratch.

The majority analyzed the two McNeal arguments: (1) does the agreement bar the McNeals' challenge to the actions of the county and (2) does the agreement give the county discretion to determine whether the vehicles were "derelict?"  Each question requires a review of the agreement language.

---

[7] The proceedings here arose out of the threat of a nuisance action over the McNeals' property, which is zoned R-1 or "single family residence," and which is not allowed to house a salvage yard.  *Compare* Wapello County, Zoning Ord. § 40.12 (R-1 Single Family Residential District) *with* §§ 40.11 (Agricultural/Rural Residential District), 40.17 (I-1 Light Industrial District).  Apparently, the county had concerns about this property's condition as early as 2002.

So to start, we interpret the contract as a whole to give effect to all its provisions. *Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 863 (Iowa 1991). When construing the meaning of a written contract, the cardinal principle is that the intent of the parties must control. *Peak v. Adams,* 799 N.W.2d 535, 544 (Iowa 2011). We should treat the McNeals' inquiry as a legal issue. *See Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435–36 (Iowa 2008) ("Interpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence. On the other hand, construction of a contract is the process a court uses to determine the legal effect of the words used. We always review the construction of a contract as a legal issue." (internal citations omitted)).

The recitals of the settlement agreement define the purpose as "allow[ing] the McNeals an additional reasonable time after notice to clean the property," with the parties "agree[ing] to a procedure" if the McNeals failed to clean the property. Then, as drafted by the parties' attorneys, a timeline to accomplish the cleanup followed these paraphrased deadlines:

April 1, 2019: From this date, the McNeals had ninety days to "clean the property *including the removal of debris and derelict vehicles* and begin repairs on the residence*.*" (Paragraph one) (emphasis added).

May 16, 2019: After forty-five days passed, the county had the right to enter the property and "determine what *remaining debris, derelict vehicles* or repairs

needed to be completed"[8] and would notify the McNeals of the additional work to be completed.  (Paragraph two) (emphasis added).

June 30, 2019: Date by which "if the *removal of debris, derelict vehicles* or maintenance of the Property" has not been "completed *to the satisfaction of the County"* the McNeals grant the "right" to the county to "enter onto the property and to remove all remaining debris, derelict vehicles, and unrepaired structures." (Paragraph three) (emphasis added).

As a final constriction to the parameters of the agreement, the McNeals, *"[o]ther than the procedure set forth in this Settlement Agreement . . . waive[d] and release[d] any other statutory or common law right to challenge the County's right to enter the Property and to conduct cleanup activities*, including any rights against the County's employees, elected officials, or agents."  (Paragraph four) (emphasis added).

Considering this overview of the agreement terms, the district court examined paragraph four of the agreement to "determine whether [the McNeals' challenge to] the [county's] interpretation of derelict goes to a right granted to [the county] or to the procedure" that the McNeals can contest.  Paired with that question, the district court first found "the language of the agreement clearly states the removal of derelict vehicles is at the [county's] satisfaction and it is [the county] who determine[s] what remaining derelict vehicles need to be removed."  It also found there was no "procedure" by which McNeals could mount a challenge because it was the county's right to interpret the term "derelict."  Thus, as this was

---

[8] The majority characterizes this quoted part of the sentence as "unintelligible" but notes the sentence is unimportant to its analysis.

not a challenge to the procedure, the McNeals could not contest the county's rights under paragraph four.

Yet the McNeals argue the agreement does not deprive them of their right to "challenge the County's conduct." Unlike the district court's decision, the majority determined the interpretation of the language "the procedure set forth in this Settlement Agreement" generated a jury question about whether the "procedure" includes "how the county conducts the cleanup, not just when the county officials could act." Still, this analysis cannot be completed in isolation, but with an overview of all of the agreement's terms. From that vantage point, I argue that, at its core, the McNeals are doing exactly what they agreed not to do— challenge the right of the county to enter the property and remove the derelict vehicles as a cleanup activity "to its satisfaction." To me, the only "procedure"[9] that could be challenged, outside the rights granted to the county in the cleanup that are set aside in paragraph four, is that surrounding the McNeals' right to the allowance of "additional reasonable time after notice" to clean the property to the county's satisfaction.

To get where it lands, the majority concludes that interpreting paragraph four depends on the credibility of the parties' extrinsic evidence and, from that evidence, a choice among reasonable inferences exists.[10] I disagree with this

---

[9] I do not find the term "procedure" to be ambiguous here as it also can be "a series of steps followed in a regular definitive order." *Procedure,* Merriam-Webster, https://www.merriam-webster.com/dictionary/procedure (last visited Apr. 8, 2022).

[10] Generally if extrinsic evidence comes into play, we examine the "relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties," but here little of that evidence came into the record. *See Pillsbury Co.*, 752 N.W.2d at 436 (quoting Restatement (Second) of Contracts § 212 cmt. b (Am.

route, as I find the words of the paragraph to be clear. And while the McNeals attempt to invent an intent not reflected in the agreement, their characterization of how paragraphs two and three play together comports with what the district court found. In the McNeals' own words in discovery responses, they described paragraphs two and three as "permit[ing] the . . . County (and/or its agents) to enter the Property and remove derelict vehicles if, 90 days after April 1, 2019 (i.e., June 30, 2019), the removal of derelict vehicles—as identified by the . . . County's notification to the [McNeals]—has not been completed to the satisfaction of the County." They just dispute whether the county could determine what was derelict without their input. But that wish battles with the language they helped draft requiring cleanup of the derelict vehicles to be to the county's satisfaction, and not subject to any process.[11]

Even so, if we examine the extrinsic evidence, as the majority would have us do, the most striking twist to that path is that the McNeals have always maintained that when they signed the settlement agreement, absolutely none of the vehicles on the property were "derelict." Likewise, during oral arguments, the

---

Law. Inst. 1979)). We were told nothing about the negotiations or how the contract terms were chosen based on those negotiations. Finally, although the majority noted the earlier bid for removal did not include removing vehicles, this is not compelling, as after receipt of this bid the McNeals' own counsel helped draft the settlement agreement that references removal of derelict vehicles. And, the term "derelict vehicles" appears five times in that agreement.

[11] The agreement also included an integration clause: "This Agreement is the entire agreement between the Parties and supersedes all prior discussions, understandings or representations. It may not be modified or amended, nor any waiver of its provisions, except by a written instrument executed by the parties." "When an agreement is fully integrated, the parol-evidence rule forbids the use of extrinsic evidence introduced solely to vary, add to, or subtract from the agreement." *C & J Vantage Leasing Co. v. Wolfe,* 795 N.W.2d 65, 85 (Iowa 2011).

McNeals' counsel offered no explanation why the McNeals would sign an agreement requiring removal of derelict vehicles when they claimed to not have any on the property.[12] So extrinsic evidence cannot support their theme that they intended the agreement to provide a method to dispute the definition of derelict when they never even believed it was an issue. The McNeals' position, that although none of the vehicles were derelict they intended a process to determine that status, contradicts the terms of the settlement agreement as written. *See Bankers Tr. Co. v. Woltz,* 326 N.W.2d 274, 276 (Iowa 1982) ("Extrinsic evidence offered to show 'what the parties meant to say' instead of 'what was meant by what they said' is not admissible . . . .").

If we considered the McNeals' conduct after signing the settlement agreement, there is further extrinsic evidence for the district court's ruling. *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 466 (Iowa 2010) ("If the principal purpose of the parties is ascertainable from the words and other conduct of the parties in light of all the circumstances, [courts] give those words and conduct great weight when interpreting the contract."). As the procedure towards cleanup progressed, the county stepped in after forty-five days had passed and the county engineer, Jeff Skalberg, sent a notice on May 21 to the McNeals addressing what still needed to be done.[13] Oddly, the McNeals made no

---

[12] On the other side, the majority points out that the county did not memorialize in the settlement agreement that the McNeals acknowledged the existence of a nuisance on their property. As a practical matter, doesn't the concession that the McNeals are granted a reasonable time to *clean the property* with a reference to debris and derelict vehicles do just that?

[13] A copy of the notice was not a part of this record. But Skalberg authored an affidavit stating he "wrote a letter on May 21, 2019 to Mrs. McNeal," and at no point during the summary judgment proceedings or in this appeal did the McNeals

effort to comply with his instructions to remove the derelict vehicles and other debris identified. The McNeals have not explained why they did not exercise any rights they now claim to have to dispute the characterization of the vehicles prior to the expiration of the cleanup period. *See Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984) (noting buyer's payment of monthly interest after the sale could be considered to decide what the parties meant by what their contract said); *Village Supply Co. v. Iowa Fund, Inc.,* 312 N.W.2d 551, 555 (Iowa 1981) ("The practical construction placed on an agreement by the parties will be given effect.").

In the end, I would analyze all the paragraphs of the settlement agreement together to arrive at what the parties intended. *See Iowa Fuel*, 471 N.W.2d at 863 ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). Unlike the majority, I agree with the district court that the effect of the settlement agreement gave the county discretion to determine which vehicles were derelict. As characterized by the county, the McNeals gave up the discretion of what vehicles would be disposed of as a part of the bargain so that they could have more time to clean up the property and avoid cleanup expenses. While I might use other words, a common sense reading of all the paragraphs shows the intent was to keep the cogs of the procedure moving in tandem to achieve the cleanup of derelict vehicles. *See id.* ("[P]articular words and phrases in a contract are not to be interpreted in isolation."). Thus, it was clear that the

---

dispute the affidavit or claim that the county failed to notify them of the required action to remove the vehicles.

inspection uncovered "work that need to be completed" by the McNeals. After all, they received the notice of what had to be done. When the terms only require that the removal be done to the "satisfaction of the County" after all other steps under the process are completed, the fair reading of the agreement is that the county decided what derelict vehicles had to go. From the beginning of the agreement to its end, there were no express terms establishing the McNeals' right to challenge what is a derelict vehicle or even what debris should be removed. All of these paragraphs, read together, do not allow the McNeals to override the discretion of the county.

In sum, what is playing out here is the saying central to a nuisance case—that one person's trash is another person's treasure. Nothing in the contract gave the McNeals a right to dispute the county's discretion over the determination of what derelict vehicles needed to be removed to the county's satisfaction. And the terms used in the agreement—"right to enter and to determine" what was a derelict vehicle and to remove derelict vehicles "to the satisfaction of the County"—are not ambiguous and show the intent of the parties to transfer discretion to the county. *See Midwest Mgmt. Corp. v. Stephens,* 291 N.W.2d 896, 913 (Iowa 1980) ("An agreement will not be given an interpretation which places one party at the mercy of another, unless the contract clearly requires that result."). Otherwise, we give no meaning to the phrase "to the satisfaction of the County." *See Iowa Fuel*, 471 N.W.2d at 863. Because the majority opinion has the effect of returning the parties to a full-fledged nuisance suit, under that determination, one would wonder why the agreement was even struck. But time ran out. And because the McNeals did

not bargain for a nuisance determination—just more time and less expense—they should not get one now.